WILLIAM C. SPRUANCE, Administrator c. t. a. of KING DOLBOW, Deceased, *v.* THOMAS DARLINGTON, Executor of MARGARET DOLBOW, Deceased, et al.

New Castle, September Term, 1894.

Equitable jurisdiction — wills — construction — after-discovered will — executors under each — respective rights — statutory provision — dower — election by court after widow's death — Statute of Limitations.

1. A court of equity has jurisdiction of all matters in dispute between any and all parties to an action, the adjudication of which may affect the integrity of a trust fund in which all are interested, though the controversy as between some of them may be of a legal nature.

2. The jurisdiction of courts of equity is not entirely determined by the absence or presence of adequate legal remedy, though either is not an unimportant element in aiding the solution of such a question.

3. Under a will directing the executor merely to sell testator's real property, and divide the proceeds in a certain manner, the title thereto in fee descends to the heirs-at-law, subject to the power to sell, and they alone are entitled to the rents and profits thereof from the death of the testator up to the time of the exercise of the power to sell.

4. A bequest to a minor legatee can legally be paid only to his properly accredited guardian, and not to his parent.

5. Revised Code, chapter 89, section 12, which declares that all "lawful" acts of an executor who has been removed shall be deemed valid, does not embrace a claim to be credited with the erection of a monument over the

Syllabus.          .

grave of the deceased, the expense of which is unauthorized by law.

6. Where testator's will was not discovered until after the death of his widow, she having then had no opportunity to elect to take in dower or as a legatee thereunder, the court will make that election for her which will be most advantageous to her estate.

7. As against an executor's cause of action for assets of the estate against one who acted as executor under a will which was afterwards found to have been revoked, the Statute of Limitations does not begin to run until letters of administration have been granted to the executor properly appointed.

8. The Statute of Limitations does not begin to run against the right of legatees under testator's true will, discovered after his estate had been administered under a supposed will, until the granting of letters of administration under the former; they supposing their rights settled under the revoked instrument, and so accepting them.

9. A paper writing purporting to be the last will and testament of K. D. was duly admitted to probate, and letters of administration granted to M. D., his widow, as executrix. M. D. had the personal property of the deceased appraised, paid various legacies bequeathed in the paper writing to certain minors, to the parents of said minors, took various parcels of the real estate as one of the devisees, and collected rents of same, paid taxes and repairs. M. D. afterwards died, having devised certain of the property obtained from the estate of K. D. Subsequently a later will of K. D. was discovered and allowed by the register. Held,

a. That the estate of M. D. could not receive credit for the legacies paid to the parents of the minors; otherwise if M. D. had paid them to their accredited guardians.

b. That the estate of M. D. was liable for the amount of the appraisement of the personal property of K. D.

c. That the estate of M. D. could not be credited with the rents collected and money expended for repairs.

d. That the estate of M. D. could, however, be properly credited with the sums laid out in the payment of the debts of K. D.; otherwise for the expense of a tombstone over the grave of K. D., that not being a legal charge.

BILL IN EQUITY.— Bill by William C. Spruance, as administrator with the will annexed of King Dolbow, deceased, against Thomas Darlington, executor of Margaret Dolbow, deceased, and others. Defendant's decedent had qualified as executrix under a supposed will of said King Dolbow, her deceased husband, and had administered his estate in accordance with its terms. After her decease another instrument was discovered, which proved to be his true will, and plaintiff was appointed administrator thereunder. He now brings this bill to determine the rights of all the defendants under the will of his decedent, and to recover from the defendant Darlington, as executor, any amount to which the plaintiff's estate may be entitled. The facts are more fully set forth in the opinion of the Chancellor.

W. C. Spruance, complainant in *propria persona*, and C. M. Curtis, for William H. Dolbow and Hattie Moy, two of the defendants.

The jurisdiction of the Court of Chancery in this State to enforce an accounting between persons maintaining a fiduciary relation with each other is well

settled. The duties as to administration of estates of decedents constitute an active express trust, and with respect to legatees, distributees and creditors, the executor or administrator bears the relation of a trustee to the *cestui que trust.* Obtaining an account from an executor or administrator by a bill in equity is an invocation of the exclusive jurisdiction of the court, and as a result, it is not a matter of any consideration that there would also be a remedy at law.

In Davis v. Davis, 1 Del. Ch. 256, a bill for an account of rents and profits was allowed against a guardian by the administrator of the deceased ward, who had attained her majority before her decease. "This is a matter of account and is peculiarly proper for investigation in the court." * * * "I will not say that the complainant could not sue at law for these rents and profits, but his remedy there could not be as certain nor as effectual as in this court."

When the subject-matter is an equitable interest, jurisdiction to obtain an account is a necessary consequence, without regard to legal remedy; and a suit for accounting is proper where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account. 3 Pom. Eq. Jur. 1420, 1421.

This court has jurisdiction not only as to the accounting between the representative of the after-discovered will and the executor of the first will, but having taken partial jurisdiction, it will dispose of the whole matter in controversy and settle the many conflicting rights by retaining jurisdiction to compel an accounting between

John K. Dolbow and Mary Ann Hoffman to the representative of the second will, and by a decree of restitution to the estate of King Dolbow of all money received by them, which should have been paid to King Dolbow's executor, make a final determination of all matters at issue.

When a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all matters at issue. So, also, the concurrent jurisdiction of equity may be exercised over matters and causes of action which are legal, and by the granting of legal remedies in order to avoid a multiplicity of suits. 1 Pom. Eq. Jur. 181.

In the case at bar, there is no fiduciary relation between the executor of the second will of King Dolbow and John K. Dolbow and Mary Ann Hoffman, such as would give him a right to require an account of rents, and as to them his remedy would primarily be an action at law. But inasmuch as such a fiduciary relation exists between the complainant and Darlington with respect to the same subject-matter, if this court take jurisdiction of the latter, it should of the former, and determine the whole matter at issue, thereby avoiding multiplicity of suits.

It cannot be claimed that Margaret Dolbow was entitled to both her common-law dower rights and the income of the fund devised in trust for her for life, because the latter provision was expressly declared to be in lieu of dower.

Having received the rents and profits, and mingled the same with her estate, and no election having been made on behalf of her estate, whether her share of the rents or interest on the legacy would be claimed, in this proceeding, the court will allow the rents and not the interest.

A widow may be excluded from her legal right to dower, and be put to her election, by an express declaration to that effect in the will. 2 Williams on Executors, 1445; 2 Roper on Legacies, 530 and 809 (3d ed.); 4 Kent, 57, 58; Kinsey v. Woodward, 3 Harr. 459.

Legacies are not payable until after the expiration of one year from the decease of the testator, and the legatee is not entitled to interest on the legacy within that time. Therefore, Margaret Dolbow's estate is not entitled to be indicted with payment of the $50 legacies except from the expiration of one year from the death of King Dolbow; that is, one year less than the claim made by the Darlington executor. So, also, as to the interest on the fund of $5,000 bequeathed to the trustee for her benefit for life. The interest on this fund was due her only from one year after the decease of King Dolbow. Rev. Code, chap. 89, §§ 36, 37, p. 679.

The direction for the sale of real estate contained in the will of King Dolbow worked an equitable conversion from the death of the testator. A court of equity will always consider that as done which ought to have been done.

The above principle was established as to equitable conversion, even when the direction for sale was not to

be executed until after the determination of a life estate granted in the land to be sold. To same effect — Sharpley v. Forwood, Exr., 4 Harr. 336.

It follows, as the result of the theory of equitable conversion, that the executor is entitled to the rents and profits of the real estate from the death of King Dolbow to the day of sale, and in this proceeding the court will direct that his estate be reimbursed as to the same from whomsoever of the parties in the cause as have received them.

In the case of In re Stevenson, 2 Del. Ch. 197, the direction to convert the whole estate, real and personal, showed such an intention to exclude the heir-at-law from receipt of the rents as to counteract the common-law presumption as to his right thereto.

The claim made on behalf of some of the defendants that the Statute of Limitations interposes a bar to the decreeing of an accounting by them with the complainant for any goods and chattels, or moneys received, more than three years prior to the filing of the bill, is clearly untenable: First, the statute does not apply to such a cause in equity; and, second, because if it did apply, the cause of action did not accrue to the complainant within three years of the filing of the bill, to-wit, when the second will was probated and letters of administration with the will annexed granted thereon to the complainant.

Act of Limitation does not begin to run until there are parties capable of suing and being sued. Where a cause of action arises after a person's death, the act does

not begin to run until a person is appointed to repre-
sent him.

Conwell's Admr. v. Morris' Admr., 5 Harr. 299, was
a suit for a vested legacy, payable after the death of
the life tenant, brought by an administrator of legatee
who had died during the life tenancy. The adminis-
trator was not appointed until more than three years
after the death of the life tenant. Held, that the act
did not begin to run until the administrator was ap-
pointed.

In Dodd's Admr. v. Wilson, 4 Del. Ch. 399, it was
held that a court of equity has full power, when neces-
sary for the protection of equitable rights of the party,
to restrain his adversary from setting up an inequitable
defense, as from prosecuting an inequitable action.

The case of Fishnich v. Sewell, 4 H. & J. 393, was
an action of trover for a slave and her children. A
minor died in 1775 owning a slave, which remained in
possession of her stepfather until his .death, and then
by his will the slave and her issue were devised by him
to the defendant. In 1812 letters of administration
were taken out upon the estate of the minor and the
action brought — plea, Statute of Limitations. Held,
the action would lie.

The delay in taking out letters having been suffi-
ciently explained, and as no right of action rested in
any person to sustain an action before letters of admin-
istration granted to plaintiff, the act could not begin to
operate until the letters granted and until demand and
refusal.

W. Saulsbury, for The Equitable Guarantee & Trust Co., and others of the defendants.

So far as the Trust Company, Mary A. H. Dolbow, Henry E. Dolbow, Helen H. Dolbow and John K. Dolbow are concerned, this case is easily disposed of, they being almost simply formal defendants, the only reason for their having been joined being to determine whether they are entitled to interest on the legacies bequeathed them from the date fixed for payment up to the time when they were actually paid to the trustee.

As to the other defendants named, Mary Ann Hoffman and John K. Dolbow, they are more than formal defendants, the complainant seeking to collect by means of this suit moneys received by them from the tenants of several properties devised to them by the will of Margaret Dolbow, their mother, during the time they believed the properties to be actually their own, before the production and probate of King Dolbow's second will.

There are just set-offs against those claims, even admitting them to be proper claims, which would undoubtedly be allowed even in a court of law, namely, the sums expended by them in taxes and repairs upon said properties.

On the other hand, however, this court has plainly no jurisdiction of the cause in hand. There must be an absence of an adequate legal remedy in order for equity to take cognizance of a cause, and not only is there a sufficient legal remedy, if there be any proper complaint whatever, in the present case, but it must be noted that

the bill itself does not even allege the absence of such a remedy. Is it not significant that this very customary and necessary averment of the want of an adequate legal remedy is omitted?

A. Higgins, for Thomas Darlington, executor, defendant.

William C. Spruance, as administrator of King Dolbow's second will, not having any interest or estate whatsoever in his testator's land but merely a power to sell the same, cannot recover any of the rents received therefrom or any amount for the use and occupation of any portion thereof, as the legal estate, prior to the execution of the power, was vested in King Dolbow's heirs, and a totally different condition arises as regards the account.

A power of sale, however explicit, does not of itself give the legal property; and when a testator directs his executors to sell, until the sale is effected, the land descends to his heirs-at-law.

Chancellor Kent states the law in the following manner: "A devise that executors shall sell, or the lands shall be sold by them, gave them but a power. A devise of the land to be sold by the executors confers a power and does not give any interest." 4 Kent's Com. 365.

And after further discussion of the subject: "The general conclusion would seem to be that, as a general rule, every express trust created by will to sell lands

carries the fee with it, but if the executors be not also empowered to receive the rents and profits, they take no estate, and the trust becomes a power without interest."

The distinction resulting from the authorities appears to be this, that a devise of the land to executors to sell passes the interest in it, but a devise that executors shall sell the lands, or that lands shall be sold by the executors, gives but a power. An eminent writer (Sugden) has concluded, from an examination of all the cases, that even a devise of land to be sold by the executors, without giving the estate to them, will invest them with a power only, and not give them an interest. 1 Williams on Executors, 578.

In the case at bar, King Dolbow in and by his last will, directed his land to be sold by his executors in the words following:

" Item. All the rest, residue and remainder of my estate of whatsoever kind and wheresoever the same may be, I direct my executor hereinafter named to sell and dispose of the same to the best advantage at his discretion."

In the case of Lockwood v. Stradley, 1 Del. Ch. 298, one Thomas Candy, by will, directed that his executors thereinafter named should sell and dispose of all his real and personal estate, wheresoever or whatsoever, at such time or times as they, or the survivors of them, could do it to the best advantage, and either at public or private sale, as he or they might see or think best, in their or his discretion (almost the exact wording of King Dolbow's will), and it was held by Chancellor Ridgely:

" That under the provision, no estate passed to the persons named as executors but that the real estate descended to the heirs-at-law of the testator."

In Greenough v. Welles, 10 Cush. 571, it was held by Bigelow, J. (pp. 577, 578), that, in the absence of a devise of the fee to the executor directed to sell the lands, it vested until the sale and conveyance by the executor in the heirs-at-law.

In Hilton v. Kenworthy, 3 East, 553, it was held by Lawrence, J., as follows:

"A power of sale does not of itself give the legal property. Where a man directs his executors to sell, till sale the land descends to his heir-at-law and he may enter." So says Lord Coke, Coke on Littleton, 236, a.

In Warneford v. Thompson, 5 Ves. Jr. 513, it was held by the Master of the Rolls that where there is a power under the will to sell lands, until that power is executed, the estate descends to the heirs-at-law, but as soon as the power is executed, the legal estate is in the vendee.

WOLCOTT, CHANCELLOR.— King Dolbow, late of the City of Wilmington, in New Castle County and State of Delaware, died on the 9th day of July, A. D. 1881, leaving to survive him a widow, Margaret Dolbow, and three children, namely: Mary Ann Hoffman, John K. Dolbow and William H. Dolbow, and five grandchildren, namely: Mary H. Dolbow, Hattie Moy and Henry E. Dolbow, minor children of the said William H. Dolbow, and Helen H. Dolbow and John Edgar Dolbow, minor children of John K. Dolbow.

After the decease of the said King Dolbow, to-wit, on the 26th day of July, A. D. 1881, a certain paper writing, bearing date the 19th day of August, A. D. 1872, was proved before and allowed by the register of wills in and for New Castle County aforesaid, as and for the last will and testament of the said King Dolbow, deceased; and letters testamentary thereon were granted to the said Margaret Dolbow, one of the executors therein named (the said John K. Dolbow, the other executor therein named, having renounced said executorship).

By this will or paper writing, the said King Dolbow gave to his daughter Mary Ann Hoffman, $100 absolutely; to his son William H. Dolbow, $10 absolutely, and to each of his three children, Mary A. H. Dolbow, Hattie A. Dolbow and Henry E. Dolbow, the sum of $50 per annum, to be paid for their maintenance, respectively, until each should attain the age of sixteen years. He also gave to his brother John Dolbow, who predeceased him, the sum of $50 per annum during his life. He also gave to his son John K. Dolbow absolutely his two stalls in the Fourth Street Market House, situated in the City of Wilmington aforesaid. The remainder of his estate, real and personal, he gave to his wife absolutely.

The said executrix proceeded to administer the estate of the said deceased according to the directions of the said will. She caused an inventory and appraisement of the household goods to be made and filed in the office of the said register of wills, the appraised value being

$263.50. She also passed an account before the register which showed that she had paid the debts of the deceased, and the funeral expenses, which, together with commissions and fees, amounted to $977.80.

The residue of the estate of said deceased consisted of seventy-nine shares of Union National Bank stock, a mortgage of $2,000, owed by William Preston, and certain real estate which he gave to his wife. From the death of her husband to the time of her death, she collected all the income that had accrued on said stock and mortgage, amounting to $2,528.63, which, together with the rents derived from the real estate, including the estimated rental value of the property occupied by herself, amounted to $6,025.

Margaret Dolbow died February 4th, A. D. 1888, leaving a last will and testament, dated February 7th, A. D. 1875, which, with the codicils thereto, was duly proved before the register February 13th, A. D. 1888, and letters testamentary thereon were in due form of law granted to Thomas Darlington, the executor therein named.

In and by the said last will and testament of the said Margaret Dolbow, she, among other things, bequeathed the said household goods of the late King Dolbow, deceased, to certain of her children and grandchildren, to whom the said Thomas Darlington, executor, delivered the same pursuant to the directions contained in the will of the said testatrix. And from the death of the said Margaret Dolbow to November 1st, A. D. 1888, her children, acting as devisees under her will, collected

the rents from the real estate as she did in her life-time.

After the death of the said Margaret Dolbow, to-wit, on or about the 1st day of November, A. D. 1888, another paper writing purporting to be the last will and testament of the said King Dolbow, deceased, bearing date the 1st day of January, A. D. 1886, was discovered and produced and filed in the office of the register aforesaid, which, by due course of law, was established as the last will and testament of the said King Dolbow, deceased. And afterwards, to-wit, on the 12th day of June, A. D. 1889, letters of administration, with the will annexed, were duly granted thereon to William C. Spruance (Edward T. Bellah, the executor named in the said will, having renounced the executorship).

The said testator, King Dolbow, in and by his said last will and testament, bearing date the 1st day of January, A. D. 1880, after directing the payment of his debts and funeral expenses, bequeathed to Edward T. Bellah the sum of $5,000, in trust, to invest the same and collect and pay the income thereof to the testator's wife, the said Margaret Dolbow, during her life, and at her death to pay the said sum of $5,000 to the testator's five grandchildren, namely, Mary Dolbow, Hatty Dolbow, Henry Dolbow, Ellen Dolbow and Edgar Dolbow, in equal shares; and did declare that the provision in behalf of his wife should be in lieu of her dower. And the said testator, in and by his said will, did direct that all the rest, residue and remainder of his estate should be sold and disposed of by his executor, and that the

proceeds arising from the same should be divided by him in three equal parts or shares, and he bequeathed one of said parts or shares to Edward T. Bellah, in trust, to hold the same and apply and pay the income thereof to the said Mary Ann Hoffman during her life, and at her decease, to divide said part or share among the said five grandchildren of the testator, share and share alike; and the said testator did further bequeath one other of said parts or shares to the said Edward T. Bellah, in trust, to apply and pay the income thereof to the testator's son, William H. Dolbow, during his life, and at his decease, to divide said part or share, in equal shares, among the children of the said William living at the time of his decease, and if at his death any of his children should be dead, leaving issue, the said issue to take their parent's share, and if at the death of the said William, all of his children should be dead, leaving no issue, then said part or share should go to his next of kin or the heirs of the said William. And the said testator did bequeath the other of said parts or shares to the said Edward T. Bellah, in trust, to hold the same and apply and pay the income thereof to the testator's son, John K. Dolbow, during his life, and at his decease, to divide said part or share in equal shares among the children of the said John living at the time of his decease, and if at his death any of his children should be dead, leaving issue, then such issue should take their parent's share; and if at the death of the said John, all of his children should be dead, leaving no issue, then said part or share should go to the next of kin or heirs of the said John.

The Equitable Guarantee and Trust Company, on the 3d day of February, A. D. 1890, was appointed trustee for the legacies or sums of money bequeathed to Edward T. Bellah, as aforesaid, he having refused to accept said trust.

The complainant, administrator of the said King Dolbow, as aforesaid, subsequently sold and converted into money all of the estate of the said testator accessible to him, and, on the 17th day of January, A. D. 1890, passed his first account before the register aforesaid, showing an unappropriated balance in his hands of $17,853.25. Out of this sum he retained $853.25 to meet the expenses of litigation and other contingencies incident to the settlement of the estate of the said testator, and paid the remainder, $17,000, over to the trustee. In the balance shown is included the rents of the real estate, which accrued between the granting of letters of administration to William C. Spruance, the complainant, and the time of the conversion of the same into personalty.

The first question to be decided is, whether the entire subject-matter of this controversy properly falls within the jurisdiction of this court. Whatever the rights or interest involved in the dispute between the complainant and trustee may be, they are strictly equitable, and are, therefore, exclusively a subject of equity jurisdiction. And though the matters in controversy between the complainant and the remaining respondents may be of a legal nature, and perfectly capable of being enforced in a legal tribunal, yet, if they are so connected with the

trust fund that it may be affected by the result of this suit, it follows as a logical consequence that all the respondents are not only proper but necessary parties to this proceeding. To determine otherwise, assuming such connection to exist, would drive the parties to a repetition or multiplicity of suits for the enforcement of their respective rights, which is contrary to the principles of equity jurisprudence.

To bring out this proposition more clearly, let us see briefly what some of the contentions of the respondents are. It is contended that the title to the real estate of King Dolbow at his decease devolved upon his heirs-at-law, subject to the exercise of the power to convert the same into money, and that pending the repose of such authority, they were entitled to the rents and profits thereof. If this be true, the complainant had no right to collect any part of the rents that may have accrued prior to the sale, and turn them over to the trustee. It is admitted that he did collect such rents and mix them with the assets in his hands, which to that extent increased the fund that he paid to the trustee. The heirs-at-law of King Dolbow, deceased, therefore, in view of their contention, claim from the complainant a sum equivalent to the rents collected and received by him.

It is also contended that the executor of Margaret Dolbow, deceased, is entitled to be reimbursed by the complainant, for the money she expended during her lifetime in payment of the debts of her deceased husband.

It is further contended that certain of the legatees under the will of the late King Dolbow, deceased, should be paid the balance that may be found to be due on their respective legacies.

If the claims presented by these contentions are allowed, it is quite apparent that the amount remaining in the hands of the complainant is not sufficient to satisfy them. And as the complainant under the circumstances is not personally liable to the persons making such demands, a part of the fund represented by the trustee will have to be taken to supply the deficiency.

Now, as the trust fund cannot be made the subject of litigation, except in a court of equity, those claims or rights, whose maintenance or protection threaten its diminution, are necessarily drawn into the same jurisdiction in order that full and complete justice may be done to all concerned.

But it is insisted that as the complainant had an adequate remedy at law respecting the claims made by him upon certain of the respondents, he has no standing in this court, admitting that they are valid and subsisting demands. It is true that the absence of such a remedy has been held by some of the most eminent judges and text writers to be the test of equity jurisdiction, but this view no doubt originated more in a desire to avoid a collision between courts of equity and common-law jurisdiction than in a desire to subserve the ends of justice. Consequently, it has never been accepted and recognized as a general rule of law. Whether this is true or not, the consensus of judicial opinion now is that the jurisdiction of courts of equity is not entirely

9

determined by the absence or presence of adequate legal remedies, though either is not an unimportant element in aiding the solution of such a question.

The facts and the circumstances of the case at bar, for the reasons already stated, furnish a very clear illustration of the hardships that might result, if the presence of an adequate remedy at law were regarded as an insuperable barrier against the exercise of equitable jurisdiction in such cases. As a matter of convenience to the courts and the lawyers, the adoption of such a rule would be a very excellent thing, in that it would relieve them of very many delicate and embarrassing questions of a jurisdictional character. But it must be remembered that the object to be secured in formulating rules of practice and enunciating principles of law is not so much the convenience of courts and lawyers as it is the advancement or promotion of justice between suitors.

The conclusion, therefore, reached by me is that I can see no reason why this court should not take jurisdiction of all the matters in dispute between any and all the parties to this suit, so far as the adjudication thereof may affect or threaten the integrity of the trust fund.

The next question that arises is: whether the executor under King Dolbow's will, or the administrator c. t. a. had a right to receive the rents in controversy?

The only source whence this right is claimed to be derived, is the clause or item in the will which simply directed the executor to sell the real estate, and divide the proceeds of the sale thereof in the manner prescribed therein. This being then a mere direction to sell, it

vested no estate whatever in the executor.   It is strictly
a naked power uncoupled with any interest.   Neither
did any estate or interest in the lands, *qua* lands, pass
to the legatees or objects of the testator's bounty as
such, because their interest under the terms of the will
attached only to the fund produced by the sale of the
property.   Therefore, between the death of the testator
and the sale, the title to the fee descended to his heirs-
at-law, and remained in them until it was divested by
the execution of the power conferred upon the executor.
During that intermediate period then, the heirs-at-law
were entitled to the rents and profits arising from the
real estate without let or hindrance from any source.
This conclusion, therefore, eliminates to a very large
extent the question of rent in the settlement of the vari-
ous accounts between the parties to this proceeding.   In
this connection it is only necessary to state that the com-
plainant must account to the heirs-at-law of King Dol-
bow, deceased, for the rents received by him, less the
costs and expenses of collecting the same.

Another question raised is, whether the estate of Mar-
garet Dolbow, deceased, should be credited with the
amount paid by her as legacies to the parents of the
minor legatees under the first will of the late King
Dolbow, deceased.

The only person to whom payment can be legally
made of money belonging to a minor, is to his or her
guardian.   In this case there is no allegation that the
money paid to the parents of these legatees on their ac-
count was improperly expended.   They, however, were

not the parties legally competent to receive such legacies, and could not, therefore, execute a valid discharge or acquittance for the same. Grant that the money in this instance was judiciously used, yet there are not a few parents who, if such a privilege were granted to them, would expend the money belonging to their children in such a way as would not be beneficial either to their physical or intellectual welfare.

The safe rule or practice to establish in such cases, is to require a strict adherence to the law in every instance where it is practicable and not inconsistent with the necessities of humanity. Therefore, the sum paid in the discharge of such legacies must be disallowed as a credit to the estate of Margaret Dolbow, deceased. If, however, Margaret Dolbow, as executrix of her late husband, had paid these legacies to parties authorized to receive the same, her estate would have been entitled to credit therefor, under section 12, chapter 89 of the Revised Code, which declares that all the lawful acts of such an executor or administrator shall be valid. Neither does this provision of the Code apply to the claim made on account of the erection of the monument at the grave of her deceased husband, because the expenditure therefor was not authorized by law.

The claims for repairs and taxes cannot be allowed for the reason that she expended the money in that behalf on her account as the owner of the property, out of the rents which she received therefrom.

The executor of Margaret Dolbow also claims that the amount expended by her in payment of the debts of her deceased husband should be a further credit to her estate. At first I was inclined to the opinion that

her estate was not entitled to such a credit upon the ground that the rents which came into her hands should under the statute be treated as assets for the payment of debts.    Upon reflection, however, I have concluded otherwise, inasmuch as nothing appears to show that she received such rents in her representative capacity.    Acting under the belief that she was the owner of the real estate, the presumption is, that she collected and received them as such owner and not as executrix.    Therefore, until something is shown to rebut such presumption, it must prevail.    Under the circumstances, the only person to whom she was accountable for the rents thus received, were the heirs-at-law of her deceased husband.

The claim is also made by Margaret Dolbow's executor that her estate is not responsible for the return of the goods and chattels mentioned, or the payment of their equivalent in money.    But this is incorrect.    Their acceptance under the first will of King Dolbow operated only as a release of her official liability on account of the use and possession thereof during her life, and the disposition of the same by her last will and testament. While they remained in her hands, or in the hands of those who hold them as a gift, they are liable to be taken as a part of the estate of King Dolbow under his last will and testament.    They could only pass beyond the control of his legal representative where the rights of innocent persons based upon a valuable consideration had intervened.    Hence, the appraised value of such goods and chattels must be treated as a just charge against her estate.

There is still another question in regard to the rights of the executor of Margaret Dolbow, deceased, caused

by her dual relation in her lifetime to the estate of her deceased husband as legatee and doweress. In view of the innocent concealment of the last will of King Dolbow, until after the death of his widow, she had no opportunity to elect whether she would take under the will or under the law. As she was deprived of that privilege by circumstances over which she had no control, the court will make the election most advantageous to her interest. In courts, both of law and equity, the rights of widows are favored. It is conceded that the annual income secured to her by the will amounted to more than she would have received out of the estate of the deceased under the law. It is, therefore, held that the widow took only under the will, and nothing under the law, and the trustee should pay to her executor the interest upon the trust fund of $5,000, from the time of the death of King Dolbow to the time of her death; and the trustee should also pay to the five grandchildren of King Dolbow interest upon their respective portions of said trust fund from the time of the death of Margaret Dolbow to the time of the payment to them of the principal thereof.

The Statute of Limitations which has been invoked by her executor can have no application in this case, granting that it is available in a court of equity. Until there are parties capable of suing and being sued, the statute does not run. This is too well settled to admit of doubt or argument.

In this case there could be no proper party to represent the estate of the testatrix until after the discovery and establishment of the second will, and letters of ad-

ministration with the will annexed were duly granted thereon.    Consequently no cause of action which the complainant had could have been affected by the statute even in a court of law, if it had been prosecuted within three years after the date of his appointment. Until then no cause of action had accrued.

Now, as to the parties who took under that will, in this court at least, they are also saved from the operation of the statute during the concealment of the will, though on a somewhat different ground.    They were unavoidably ignorant of their rights.    They cannot be chargeable with either negligence or carelessness, as no amount of diligence would have aided them in the discovery of the document from which their rights are derived.    There was nothing to awaken such diligence in the minds of reasonable persons.    Their sleep then was not the slumber of the foolish.    While the first will stood on the record unchallenged, they acquiesced in its provisions as the foundation and measure of their respective interests in the estate of the deceased testator.    They did so because there was nothing either of record or outside of the record to show a different testamentary intention on his part.    To permit the Statute of Limitations to be interposed to prevent the parties from adjusting themselves to the changed conditions produced by the accidental finding of the second will would be carrying it beyond the purpose it was intended to serve.    A court of equity will not allow such an inequitable use to be made of such a wise and beneficial statute.

Let the decree be drawn in conformity with this opinion.