Zimmerman, J.
 

 This case arises under the relatively new Probate Code, and the decisions rendered under the old statutes, now repealed, are helpful only in-so-far as their reasoning may still be adopted in construing the new laws.
 

 The statement of the case is indicative of the question to be decided by this court. Contention is made by the next of kin of Harry B. Miller, deceased, that the distribution of the estate of Clara J. Miller approved and ordered by the lower courts is erroneous because of their failure properly to apply Section 10503-4, General Code, pertaining to descent and distribution, and Section 10503-5, General Code, immediately following, sometimes called the “half and half” section. So much of Section 10503-4 as is here applicable, provides:
 

 “When a person dies
 
 intestate
 
 having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall
 
 descend
 
 and pass in parcenary, except as otherwise provided by law, in the following course: * * *
 

 “4. If there be no children, or their lineal descendants, three-fourths to the surviving spouse and one-fourth to the parents of the intestate equally, or to the surviving parent;
 
 if there be no parents, then the whole to the surviving
 
 spouse.” (Italics ours.)
 

 
 *234
 
 Section 10503-5, General Code, reads as follows:
 

 “When the relict of a deceased husband or wife dies intestate and without issue, possessed of any real estate or personal property which came to such relict from any deceased spouse, by deed of gift, devise, bequest or
 
 descent,
 
 then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass to and vest in the children of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased children. If there are no children or next of kin of deceased children, then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass and descend one-half to the brothers and sisters of such relict, or the next of kin of deceased brothers and sisters, and one-half to the brothers and sisters of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased brothers and sisters.” (Italics ours.)
 

 Plaintiffs in error assert with much earnestness that the sum of $5,003.61 came from the estate of Harry B. Miller to that of Clara J. Miller by “descent” within the purview of Section 10503-5, as limited by Sections 10504-55 and 10504-60, General Code, and hence should be distributed one-half to the next of kin of Clara J. Miller and one-half to the next of kin of Harry B. Miller.
 

 It now becomes appropriate to inquire as to the manner in which the sum in controversy reached the estate of Clara J. Miller. She having died five days after her husband, without electing to take under his will or under the law, the situation presented comes clearly within that part of Section 10504-60, General Code, which says, “If the surviving spouse dies within the time limit for election without having elected, then such spouse, whether or not a citation has been issued, shall be
 
 presumed conclusively to
 
 elect to take under
 
 *235
 
 the statute of descent and distribution.” (Italics ours.) This conclusive presumption is tantamount to an actual election, so it is necessary to revert to Section 10504-55, General Code, to ascertain what portion of the estate the surviving spouse may be entitled to upon rejection of the will. That section states:
 

 “ * * * the probate court * * * shall issue a citation to the surviving spouse if any, to .elect whether to take under the will or under the statute of descent and distribution; but in the event of election to take under the statute of descent and distribution,
 
 such spouse shall take not to exceed one-half of the estate *
 
 * (Italics ours.)
 

 The next question presenting itself is the true meaning of the phrase “under the statute of descent and distribution” as used in Sections 10504-60 and 10504-55. Does it mean that the surviving spouse is literally placed within the operation of that statute (Section 10503-4) to a restricted degree, or was it the legislative intent and purpose to use such phrase as merely definitive of the quantity of the share to be taken by the surviving spouse within a limitation of “not to exceed one-half of the estate”?
 

 Under the existing laws of Ohio, dating from January 1, 1932, no distinction is drawn between ancestral and non-ancestral property, and Section 10503-4, General Code, is now the principal statute controlling, in a majority of instances, the distribution and descent of an intestate’s estate, no matter how .acquired. By its terms this section is limited to the distribution and descent of property when its owner dies intestate. Sections 10504-55 and 10504-60, General Code, are concerned with the property of an owner who dies testate. They give the relict of a testate property owner the right to reject his or her will and to take a share of his or her property which may often be less than if the owner had died intestate and the taking was clearly under the statute of descent and distribution. The ar
 
 *236
 
 gument is therefore persuasive that the phrase “under the statute of descent and distribution” appearing in the last mentioned sections is not there used in such sense as to place the relict directly under the operation of Section 10503-4, General Code, but rather in the sense that such section shall be used as a measuring stick to determine the amount of the estate which shall be taken, within an absolute limitation of not more than one-half as prescribed by Section 10504-55.
 

 Let us pursue the thought further. If Harry B. Miller had died
 
 intestate,
 
 Clara J. Miller, as his widow, would then have succeeded to his entire estate under subdivision 4, of Section 10503-4, there being no children, or their lineal descendants, and no surviving parent. She dying intestate, Section 10503-5 would apply, and the property which she received from the estate of her husband having come by “descent”, would go one-half to her next of kin and one-half to the next of kin of Harry B. Miller. But the real facts of this ease are quite different. The property which Clara J. Miller received from the estate of her husband did not come to her by reason of his intestacy, but because he left a will, the provisions of which she was conclusively presumed to have rejected. This conclusive presumption amounting to actual rejection, Section 10504-55 asserts itself, whereby one-half of the estate was all she could or did receive. We therefore have one and the same person who would have received the whole estate had its owner died intestate, but who in reality received only one-half of it because the owner died testate and his will was rejected.
 

 The word “descent”, as ordinarily used, denotes the manner whereby one person upon the death of another acquires the real property of the latter as his heir-at-law. The word retains much of this meaning in Section 10503-5. If Clara J. Miller had taken the estate of Harry B. Miller strictly in the capacity of heir-at-law, all of it would have been hers through the statute
 
 *237
 
 of descent and distribution. But she actually took one-half of it by the operation of another and independent statute. We cannot reconcile ourselves to the idea that it was the legislative purpose so to join Sections 10504-55 and 10503-4, that when property is taken under the former, the recipient is placed directly under the latter and acquires the property by “descent” within the intent and meaning of that word.
 

 It is our conclusion that Clara J. Miller did not take any part of the estate of Harry B. Miller within the provisions of Section 10503-4 or by “descent” under Section 10503-5. The lower courts reached the correct result, and the judgment of the Court of Appeals is in consequence affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Day, JJ., concur.