Stewart, J.
 

 We shall consider the various findings of the Probate Court which were reversed by the Court of Appeals.
 

 First, was the Probate Court authorized to order the estate of Bose Baleigh to pay the estate of Michael Baleigh the sum of $2,500 as property exempt from administration
 
 %
 

 Section 10509-54, General Code (114 Ohio Laws, 413), provided:
 

 “When a person dies leaving a surviving spouse, or minor child or children, the following property if selected as hereinafter provided, shall not be deemed assets or administered as such, but must be included and stated in the inventory of the estate: household goods,- livestock, tools, implements, utensils, wearing apparel of the deceased and relics and heirlooms of the family and of the deceased, ornaments, pictures and books, to be selected by such surviving spouse * # * not exceeding in value 20 per centum of the appraised value of the property, real and personal, comprised in the inventory, but in no event is the value of the property not deemed assets to be more than $2,500, if there be a surviving spouse * # * nor less than $500 * * * if there be so much comprised in the inventory and selected as herein provided; or, if the personal property so selected be of less value than the total amount which may be selected as herein provided, then such surviving spouse * * * shall receive such sum of money as shall equal the difference between the value of the personal property so selected and such amount, and such sum of money shall be a charge on all the property, real and personal, belonging to the estate, prior to the claims of all unsecured creditors of the decedent or of the estate.”
 

 
 *171
 
 The Court of Appeals was of the opinion that the right of a surviving spouse, under Section 10509-54, General Code, is a personal right belonging to the relict of a deceased spouse and as such does not survive such relict’s death. As authority for its view, that court cited the case of
 
 In re Estate of Metzger,
 
 140 Ohio St., 50, 53, 42 N. E. (2d), 443. However, the
 
 Metsger case
 
 was entirely dissimilar to the instant one and simply decided, as the syllabus states:
 

 “When a wife expires within three days after the death of her husband, or within 30 days from his demise if their extinction is attributable to a common accident, he is deemed to have died last and his estate passes and descends accordingly, under Section 10503-18, General Code. In such circumstance there is no widow within the meaning and intent of the statute, and no year’s allowance under Section 10509-74, General Code, and^ no property not treated as assets under Section 10509-54, General Code, may be claimed" by her personal representative.”
 

 In the instant case Michael Raleigh did survive as the spouse of Rose Raleigh and he was a widower and entitled to claim property not treated as assets under Section 10509-54. 'He was prevented from doing so because he died before any inventory was filed in the estate "of Rose Raleigh and since the property which may be claimed as not assets or the money in lieu thereof shall consist of not more than 20 per cent of the appraised value of the property, real and personal, a selection by Michael Raleigh was impossible.
 

 In
 
 Davidson
 
 v.
 
 Miners & Mechanics Savings & Trust Co., Exr.,
 
 129 Ohio St., 418, 195 N. E., 845, 98 A. L. R., 1318, the second paragraph of the syllabus reads:
 

 “The widow’s year’s allowance and the allowance given her under Section 10509-54, General Code, are a debt and preferred claim, respectively, against her deceased husband’s estate, deductible before a deter
 
 *172
 
 mination of the share of the estate to be taken by the widow ‘under the statute of descent and distribution.’ ”
 

 If the allowance under Section 10509-54, General Code, is a preferred claim against the estate, it is logical that it inures not only to the benefit of the spouse who is entitled to it but likewise to his estate after his decease.
 

 In the case of
 
 Stetson, Admr.,
 
 v.
 
 Hoyt,
 
 139 Ohio St., 345, 40 N. E. (2d), 128, the syllabus reads:
 

 “By virtue of Section 10509-54, General Code, the administrator of a surviving spouse is entitled to a lien upon the real property of her predeceased spouse for the balance in money over the appraised value of the personal property of such predeceased spouse selected by such surviving spouse in her lifetime, so as to make up the maximum allowance under the statute even though no further selection has been made by such surviving spouse.”
 

 In the
 
 Stetson case
 
 a widow had selected only $65 worth of property for her statutory exemption of 20 per cent of the total value of all the property of her deceased husband, and there was a balance due of more than $2,000 to which she would have been entitled had she lived, and to which her administrator claimed to be entitled. The Probate Court disallowed the administrator’s claim for the balance due, the Court of Appeals reversed the judgment of the Probate Court, and the Supreme Court sustained the Court of Appeals.
 

 Judge Hart stated on page 349:
 

 “The surviving spouse may select at the appraised value all or any part of the household goods, livestock, tools, implements, utensils, wearing apparel of the deceased, relics and heirlooms of the family of the deceased, ornaments, pictures and books not exceeding in the aggregate the amount of the allowance to be determined as above stated. If the property so selected be of less value than the total amount which
 
 *173
 
 may be selected, then tbe balance shall be paid to such1surviving spouse in money. If there is no such property, or if none is selected, then the whole amount of the allowance shall be paid to such surviving spouse-in money, and such money shall be a charge on all property, real or personal, belonging to the estate off the deceased spouse.
 

 ‘ ‘ The allowance provided by the statute in question-in excess of the value of the specific personal property actually selected constitutes an obligation in the nature-of a debt due from the estate to the surviving spouse which has a preferred status as to payment as against all unsecured creditors of the estate of the deceased spouse.”
 

 If a widow has made a selection of only trifling property and dies, and a balance of over $2,000 has neither-been selected by her nor paid her, and that balance-constitutes a debt or preferred claim to which her estate is entitled, it logically follows that the entire claim is in the nature of a debt and constitutes a preferred claim, and if the one who is entitled to make the claim is prevented from doing so by his death, his estate is entitled to an allowance of money in lieu thereof.
 

 We hold, therefore, that the Probate Court was jus-, titled in ordering the estate of Rose Raleigh to pay to the estate of Michael Raleigh the sum of $2,500 as-property exempt from administration.
 

 Prom the foregoing holding it necessarily follows that the Probate Court was correct in its second! finding that the administrators of Michael Raleigh) were not entitled to an order to sell his real estate to> pay his debts and administration costs since the $2,500 was more than sufficient to pay them.
 

 As to the third finding of the Probate Court, setting aside the judgment entered in case No. 14552, wherein it was determined that the estate of Michael Raleigh
 
 *174
 
 and Ms heirs at law had no interest in the estate of Rose Raleigh except as provided in her will, there is no serious contention. Counsel for appellees in the oral argument before this court practically abandoned any claim with reference to the judgment in case No. 14552 being
 
 res judicata.
 
 That judgment assuredly would not bind those heirs at law of Michael Raleigh who had not been parties to it. There is no such privity between a personal representative and the heirs of a person as will cause a judgment against the representatives to foreclose the heirs, who are not parties thereto, where real estate is involved.
 

 The fourth finding of the Probate Court presents a more difficult question. That finding was that, by reason of the fact that no application to probate the will of Rose Raleigh was filed during the lifetime of Michael Raleigh, he was afforded no opportunity to elect to take or reject under the provisions of Rose’s will and it was the duty of the court, sitting as a court of equity, to make a selection on behalf of Michael Raleigh in the most advantageous manner to M-m^ which the court found to be under the statute of descent and distribution.
 

 It is argued by appellees that the Probate Court was without jurisdiction to make an election on behalf of the estate of Michael Raleigh; that Michael Raleigh was aware that his wife had died leaving a will and he had possession of it; and that, upon Ms death some five and one-half months later, the will had not yet been offered for probate. It was urged further that he had collected the rents of Rose Raleigh’s property and applied them to his own use both before her death and afterwards, and that he had acted as if he were entitled to the income from the real estate.
 

 ■It was contended that these actions of Michael Raleigh constituted an election to take under the will and, if they did not constitute such an election, that,
 
 *175
 
 by reason of Ms conduct, Michael Ealeigh was estopped from making an election to take otherwise than under the will and his heirs are bound thereby.
 

 Section 10504-55, General Code (116 Ohio Laws, 390), provided:
 

 “After the probate of the will and filing of the inventory, appraisement and schedule of debts, the Probate Court on the motion of the executor or administrator, or on its own motion, forthwith shall issue a citation to the surviving spouse, if any, to elect whether to take under the will or under the statute of descent and distribution; but in the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate. Such election shall be made not later than one month after service of the citation to elect, or if no citation has been issued, within nine months after the appointment of the executor or administrator or the further time allowed by the court therefor for good cause shown, on motion filed before the expiration of such period, and when made shall be entered upon the minutes of the court.”
 

 Section 10504-60, General'Code (116 Ohio Laws, 390), provided:
 

 “If the surviving spouse fails to make such election in person or by written instrument, or dies, at any time before the expiration of the time limit provided by law without having made such election, such spouse shall be conclusively presumed to have elected to take under the will and such spouse who fails to elect and the heirs, devisees and legatees of such spouse who dies without having elected and those claiming through or under them, shall be bound accordingly, and persons may deal with the property of the decedent in accordance therewith.”
 

 It is claimed that, in accordance with Section 10504-60, General Code, since Michael Ealeigh died before
 
 *176
 
 he made any election to take under the will of Rose Raleigh he is conclusively presumed to have taken under the will and his heirs are bound thereby.
 

 It is to be observed, however, that under Section 10504-55, General Code, the election of a surviving spouse to take under the will or under the statutes of descent and distribution is to be made after the probate of the will. Where the will is probated during .the lifetime of the surviving spouse and no election is made, there is, of course, the conclusive presumption that the surviving spouse has elected to take under the will.
 
 Miller
 
 v.
 
 Miller, Admr.,
 
 129 Ohio St., 230, 194 N. E., 450;
 
 In re Estate of Knofler,
 
 143 Ohio St., 294, 55 N. E. (2d), 262.
 

 Where it was legally impossible to make an election to take under a will, and such would be the case where a will was not probated until after the death of a surviving spouse, the Probate Court has jurisdiction to enter an election on behalf of the one who could not make that election for himself.
 

 In the case of
 
 Ambrose
 
 v.
 
 Rugg, Admx.,
 
 123 Ohio St., 433, 175 N. E., 691, 74 A. L. R., 449, the first paragraph of the syllabus reads:
 

 “The jurisdiction of the court to enter an election in behalf of a mentally incompetent widow to take under the provisions of the law instead of under the provisions of the will, is not abrogated by a statute providing in substance that a failure to file such election within a specified time would be deemed an election to take under the will.”
 

 On page 439, Judge Matthias cited two cases with approval, as follows:
 

 “The case of
 
 Peckenschneider
 
 v.
 
 Schnede
 
 (Iowa), 227 N. W., 335, involved a situation where the widow died prior to the probate of the will. The Supreme Court of Iowa held that the statute of that state, which provides that a spouse is conclusively presumed to have
 
 *177
 
 elected to take under a will in the absence of an election otherwise did not apply.
 

 “Spruance, Admr.,
 
 v.
 
 Darlington, Exr.,
 
 7 Del. Ch., 111, 30 A., 663, involves a case where the existence of a lost will was innocently concealed until after the death of the widow of the testator, and she therefore had no opportunity to elect whether she would take under the wall or the law. It was held that, as she was deprived of that privilege from circumstances over which she had no control, the court would make the election most advantageous to her interests, and the court made its finding and entered its decree accordingly.”
 

 In the instant case, since the will of Rose Raleigh was not offered for probate until after the death of her spouse, Michael Raleigh, he had no opportunity to elect to take under the will for the reason, as has been suggested, that Section 10504-55, General Code, provides that the election be made after the will is probated and the inventory, appraisement and schedule of debts filed.
 

 It is true that Michael knew of the will, but apparently so did most of the family, and, since Michael had always treated Rose’s property as his own, he continued to do so.
 

 Upon both iogic and authority, since' no election to take under a will or under the statute of descent and distribution can be made until after the probate of the will, if a surviving spouse dies before such will is probated, he is not bound by the provisions of Section 10504-60, General Code, and the Probate Court is authorized to make an election for the estate of the spouse who survives the predeceased spouse, which election shall be that most advantageous to the estate.
 

 The Probate Court was, therefore, not in error when it made an election for and on behalf of the estate of Michael Raleigh, under the will of Rose Raleigh, according to the statute of descent and distribution.
 

 
 *178
 
 The fifth finding of the Probate Court, by which it removed Curtis P. Raleigh and R. S. Barnhardt as administrators of the estate of Michael Raleigh, needs little comment or discussion. It is obvious that, as remaindermen heirs of Rose Raleigh, their interests were hostile to the claims of the heirs of Michael Raleigh and, without any imputation on their integrity, it would be practically impossible for them to act as administrators of Michael Raleigh’s estate in its best interests.
 

 In its sixth finding the court reopened the estate of Rose Raleigh, which it necessarily had to do in view of the remainder of its findings, and in its seventh and' final finding it provided for the descent of the estate of Rose Raleigh under the election made for the estate of Michael Raleigh and determined the heirs of the estates of both Rose Raleigh and Michael Raleigh and the proportion to which they are entitled.
 

 Since we are of the opinion that the probate judge's findings upon the controverted issues are correct, its fifth, sixth, seventh and final findings follow as a matter of course.
 

 The judgment of the Court of Appeals is reversed and that of the Probate Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Turner and Taet, JJ., concur.