**RUSSELL v ROBERTS et**

Ohio Appeals, 4th Dist, Athens Co

Decided Sept 23, 1936

M. D. Hughes, Athens, for appellee.

W. Kenneth Howell, Woolley & Rowland, Athens, John W. Bolin, Athens, and Gordon B. Gray, for appellants.

## OPINION

By BLOSSER, J.

Charles H. Russell, administrator of the estate of Emma G. Howell, deceased, filed a petition in the Probate Court seeking the ·determination of the heirs of his decedent entitled to inherit her estate. The cause was submitted to that court upon an agreed statement of facts and two supplements thereto, the pertinent parts of which are as follows:

Joseph N. Howell married Margaret E. Wolf. Bertrand C. Howell, a son born as the result of this marriage, died intestate June 14, 1918, leaving Helen Howell his widow, who has since remarried and is now

Helen Howell Weber, and two minor sons who died in infancy, without issue, and prior to the death of their grandparents.

Margaret E. Howell died testate November 15, 1927, leaving Joseph N. Howell, her husband, and also certain brothers and sisters, and the child of a deceased sister. She devised her estate, including an undivided one-half interest in a lot in Athens, to Joseph N. Howell, who took under the will.

Joseph N. Howell thereafter remarried, and died intestate January 7, 1934, leaving Emma G. Howell, his widow, and also a number of brothers and sisters and the issue of a deceased sister. His estate consisted of the undivided one-half interest in the lot in Athens which had been devised to him by the will of his former wife, Margaret E., and also certain other personal property and real estate not coming under the will.

Emma G. Howell died intestate February 5, 1934, without living spouse, issue or parents and leaving several sisters. During the short interval intervening between the death of her husband and her death she did not dispose of any of the personal property or real estate which came to her from the estate of her husband.

On February 15, 1934, an administrator de bonis non was appointed for the estate of Joseph N. Howell, and the appraisers of his estate set off to the estate of Emma H. Howell, deceased, the sum of $2,500 in cash, as property exempt from administration of his estate, and $1,000 as the year's allowance for his widow, which sums were paid to the administrator of the estate of Emma G. Howell.

Three groups of persons claimed either an interest in, or the whole of the estate of Emma G. Howell, namely, (1) the sisters of Emma G. Howell, deceased, (2) the aunts and uncles of Bertrand C. Howell, deceased, and (3) Helen Howell Weber, the widow of Bertrand C. Howell. The Probate Court entered a decree finding that the sisters of Emma G. Howell were entitled to the undivided half of the lot devised by Margaret E. Howell to Joseph N. Howell, and also to the $2,500 and $1,000 paid by the administrator of Joseph N. Howell to the administrator of Emma G. Howell; and also that the aunts and uncles of Bertrand C. Howell were entitled to the real estate and personal property which had not come to Joseph N. Howell from his former spouse. Thereupon the sisters of Emma G. Howell, deceased, appealed to this court on a question of law.

The various sections of the Probate Code in effect at the time of the death of Joseph N. Howell and Emma G. Howell were enacted at the same time as a general bill to revise, consolidate and codify the probate laws. It follows that the various provisions thereof are to be construed together.

Sec 10503-4, GC, provides:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course: * * *

"4. If there be no children, or their lineal descendants, three-fourths to the surviving spouse and one-fourth to the parents of the intestate equally, or to the surviving parent; if there be no parents then the whole to the surviving spouse. * * *

"6. If there be no spouse, no children or their lineal descendants, and no parents surviving, to the brothers and sisters, whether of the whole or the half blood of the intestate, or their lineal descendants, per stirpes."

Sec 10503-5, GC, provides:

"When the relict of a deceased husband or wife dies intestate and without issue, possessed of any real estate or personal property which came to such relict from any deceased spouse, by deed of gift, devise, bequest or descent, then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass to and vest in the children of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased children. If there are no children or next of kin of deceased children, then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass and descend one-half to the brothers and sisters of such relict, or the next of kin of deceased brothers and sisters, and one-half to the brothers and sisters of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased brothers and sisters."

The property exempt from administration in the estate of Joseph N. Howell, and the year's allowance to Emma G. █ Howell, his widow, provided for by §§10509-54 and 10509-

74, GC, constituted a debt and preferred claim against the estate of Joseph N. Howell and did not pass to Emma G. Howell by descent. Miller v Miller, Admr., 49 Oh Ap 220, 197 NE 134; affirmed in 129 Oh St 230, 194 NE 450. Emma G. Howell died leaving "no spouse, no children or their lineal descendants and no parent surviving." The distribution of these assets as a part of the estate of Emma G. Howell is controlled by §10503-4, paragraph 6, GC, and the sisters of this decedent are therefore entitled to these assets of her estate.

Joseph N. Howell died intestate leaving no children or their lineal descendants and no parents or parent surviving. By virtue of the provisions of §10503-4, paragraph 4, GC, the property which he had acquired from sources other than the estate of his deceased spouse, Margaret, passed and descended to his surviving spouse, Emma.

The phrase "except for the intestate share of the surviving spouse, if any, of such relict," in §10503-5, GC, refers to the share a surviving spouse would take under the conditions set forth in the various paragraphs of §10503-4 GC. At no place other than in §10503-4 GC, in the chapter entitled Descent and Distribution, is any share or interest given a surviving spouse. To hold that the term in question refers to the provisions made for a surviving spouse in other sections of other chapters of the Probate Code would in instances where an estate is of considerable value thwart the plain purpose of this code to increase the share or interest of a surviving spouse over what it had been under the prior laws.

Sec 10503-4, GC, is the principal section covering the distribution and descent of property of an intestate, but upon the property came to the relict from a deceased spouse the provisions of this section are supplanted and controlled by the provisions of §10503-5 GC. The provisions of the latter section must be first resorted to in determining the descent of the undivided one-half of the lot in Athens devised by Margaret to Joseph, of which he died seized. When the relict (Joseph) died intestate and without issue (which means living issue) possessed of the undivided one-half of the lot which came to such relict by devise from his deceased spouse, the intestate share of his surviving spouse (Emma) is to be determined by §10503-4, GC. Joseph left "no children or their lineal descendants" and no parent or parents, and the whole of the undivided one-half interest in the lot passed to and descended to Emma by virtue of §10503-4, paragraph 4, GC.

When the relict (Emma) died intestate and without issue, possessed of the property which came to such relict by descent from her deceased spouse, she left no surviving spouse, therefore the clause in §10503-5 GC, providing for "the intestate share of the surviving spouse, if any, of such relict," has no application in the distribution or descent of the property so acquired by Emma. The determining factor of whether the provisions of §10503-5 GC are applicable to the descent of any property going to make up the estate of Emma is whether such property came to Emma from Joseph by one of the four modes—descent in this case—set forth in the section. No distinction is made in this section in its application to property which came to Emma from Joseph, regardless of the manner in which Joseph acquired that property; and the provisions of the section apply with equal force and are controlling in the descent at the death of Emma of the undivided one half interest in the lot devised by Margaret to Joseph, of which he died seized, as well as to the descent of the property acquired by Joseph from other sources, of which he died seized. The section provides that when there is no surviving spouse of an intestate relict of a deceased husband or wife, the property which came to such relict from the deceased husband or wife "shall pass to and vest in (1) the children of the deceased spouse from whom such real estate or personal property came or (2) the next of kin of deceased children." Emma inherited the property unconditionally from her deceased husband, Joseph, under the provisions of §10503-4, GC, and could have sold or disposed of it by will or otherwise during her lifetime. In that case the provisions of §10503-5, GC, would not have come into operation. But as she did not dispose of it during her lifetime its descent is controlled by the provisions of §10503-5, GC. Caldwell v Tax Commission, 52 Oh Ap 124, 3 NE (2d) 543.

Counsel for the sisters of Emma G. Howell have laid stress on the case of Larkins v Rouston, 115 Oh St 639, 155 NE 227. That case had under consideration §8577, GC, and interpreted the phrase "legal representatives." In 1932 the statutes of descent and distribution were codified and re-enacted, and this section was carried into the General Code as §10503-5 GC, in which the

words "legal representatives" were changed to "next of kin." The Legislature must have intended to give some meaning to the change in the language, and the phrase "next of kin" must have been intended to be used in its ordinary legal meaning.

The next of kin are those relatives of a deceased who inherit, and §10503-2, GC, provides that in the determination of intestate succession next of kin shall be determined by the degrees of relationship, computed by the rules of civil law.

It is said in 4 Kent's Com. 444:

"In the mode of computing the degrees of consanguinity, the civil law, which is generally followed in this country upon that point, begins with the intestate, ascends from him to a common ancestor, and descends from that ancestor to the next heir, reckoning a degree for each person, as well in the ascending as descending lines."

The rule is also set forth in Adams & Hosford Probate Practice and Procedure, 442.

Applying these rules to the facts in this case we find the real estate came from Joseph N. Howell; that he had one child, Bertrand, now deceased, who left no issue surviving at the time of the death of Emma. Upon Emma's death, she having no issue, the real estate passed to Bertrand's next of kin. In this case the intestate referred to in the rule of civil law is Bertrand. The word ancestor as used in this connection is to be given its ordinary meaning.

It is said in **Bruster v Benedict, 14 Ohio 368,** at page 385: "By ancestor, we understand, in common parlance, one from whom a person lineally descended."

And in 2 Corpus Juris, 1334, it is said: "The popular meaning of the word (ancestor) is one from whom a person descends; one from whom a person may be descended * * * a progenitor."

The word ancestor in this connection is not limited to the ancestor from whom the estate came, but is used in a broader sense to include and mean progenitor or progenitors, such as father and mother. Under the former statutes of descent the phrase "ancestor from whom the estate came" meant the ancestor from whom the estate came immediately, and that is the interpretation which was placed upon the phrase by our Supreme Court in **Clayton v Drake,** **17 Oh St 367,** and **Stannard v Case, 40 Oh St. 211.** Those cases and other cases decided at that time were dealing with ancestral or non-ancestral property. The statutes of descent and distribution at that time made a distinction between ancestral and non-ancestral property. With the enactment of the new Probate Code that distinction has been abolished and the reason for the decisions in dealing with descent under the former statute no longer exists. The distinction between ancestral and non-ancestral property having been abolished, and the word ancestor being used in its ordinary and popular sense, Bertrand's ancestors are his father Joseph and his mother Margaret, because they were his progenitors. The words next of kin must be construed to mean the nearest in proximity by blood.

In cases of distribution relatives of the intestate on the father's side and on the mother's side stand on an equal footing, and are in equal degrees of kindred. It may happen, as in this case, that relations are distant from Bertrand by an equal number of degrees, and equally entitled to inherit, who are not related at all to each other. 1 Williams on Executors, 497; Rockel's Ohio Probate Practice, 833.

The brothers and sisters of Joseph and the brothers and sisters of Margaret are the next in blood and the next of kin of Bertrand. If any brother or sister is dead, leaving a child or children surviving, such child or children take the share of the deceased parent. **14 Ohio Jurisprudence 164.**

Bertrand's widow, now Helen Howell Weber, is not of the blood of her deceased husband and is not classed as next of kin. The term next of kin does not include husband or wife. **McCormick, Admr. v Dunker, 14 C.D. 553, 3 C.C. (N.S.) 668; 14 Cyc. 34; 14 Ohio Jurisprudence 198; 9 Ruling Case Law 52.**

The judgment of the Probate Court is affirmed in part and reversed in part as herein indicated, and the facts not being in dispute final judgment will be entered in accordance herewith.

Judgment affirmed in part and reversed in part.

MIDDLETON, PJ, and McCURDY, J, concur.