**SCHWAIGERT v VITZHUM et**

Ohio Probate Court, Franklin Co

No 81153. Decided May 7, 1938

Donald M. Hamilton, Columbus, for estate of Catherine D. Vietmeier.

## OPINION

By McCLELLAND, J.

This is an action for declaratory judgment, brought by Catherine Schwaigert, as administratrix of the estate of Catherine D. Veitmeier, deceased.

Charles F. Veitmeier, husband of the said decedent died testate about three months prior to the date of the death of said decedent. The will of said husband devised his entire estate to said decedent. Said decedent died intestate and without issue.

The court is asked to determine what property said decedent was possessed of at the time of her death which came to her from her deceased husband by devise under his will. This determination is asked by the administratrix so that she may know what property passes under §10503-5 GC, the so-called "half and half" statute. In this connection the court is also asked to determine who are the brothers and sisters of said decedent and the next of kin of deceased brothers and sisters—the same is also asked with reference to the brothers and sisters of the said Charles F. Vietmeier. The petition also asks for a determination of the heirs of said decedent.

We will first determine what property said decedent was possessed of which came

tc her by devise under her husband's will. We find from the evidence that such property consists of the real estate located at 186 Wilson Avenue, Columbus, Ohio; a savings account in the Pennsylvania Railroad Employee's Provident & Loan Association amounting to $769.89; one 1936 Nash sedan automobile; refunds from the Preferred Auto Insurance Company on insurance policies on the above automobile amounting to $24.00 and $2.89 which refunds were collected by the administrator with the will annexed of the estate of the said Charles F. Vietmeier, deceased, after the death of the said Catherine D. Veitmeier; one 3¼% $100.00 treasury bond and 42 shares of the capital stock of the Pennsylvania Railroad Company represented by four stock certificates.

We further find from the evidence that after the death of said decedent, her administrator found among her possessions a certificate of deposit of the face amount of $2000.00 issued by the First Federal Savings & Loan Association of Columbus; under date of May 24, 1937, to C. F. or Catherine D. Vietmeier, said certificate bearing the number F. P. 5193. Said certificate of deposit was issued by virtue of the following subscription or signature card which was signed by Mr. and Mrs. Vietmeier and delivered to said loan association at the time said certificate was issued:

No F. P. 5193.

NAMES Vietmeier, C. F. or Katherine D. We hereby subscribe for ..... shares in the FIRST FEDERAL SAVINGS & LOAN ASSN. OF COLUMBUS, and as many more such shares in said association as the total balance to my credit may exceed the above number of shares, subject to the laws of the United States, the rules and regulations of the Federal Home Loan Bank and the charter and by-laws of the association as they now are or as they may hereafter be amended.

It is understood and agreed that the shares hereby subscribed for are issued by the association, and all moneys paid or that may hereafter be paid thereon are paid by the undersigned, and such shares are held by said association for our joint account, and that said shares may be repurchased subject to the by-laws of the association, by either before or after the death or incapacity of either, and either is authorized to pledge the same as collateral serity to a loan.

C. F. Vietmier Katherine D. Vietmieir
(1) Signature (2) Signature

186 Wilson Avenue 186 Wilson Avenue
Street and Number Street and Number
Columbus, Ohio. Columbus, Ohio
City and State City and State
Date: May 24, 1937 (For a joint account)

According to said subscription card, the shares of said Loan Association, represented by said certificate, were held for the joint account of Mr. and Mrs. Vietmeier. Since no right of survivorship was attached to the certificate of deposit and since Mrs. Vietmeier did not exercise her right to repurchase said shares in accordance with the provisions of said subscription card before her death, and there being no other evidence as to the ownership of said certificate, we hold that half of said certificate belongs to the estate of Charles F. Vietmeier and the other half to the estate of Catherine D. Vietmeier. We therefore find that that half of said certificate came to Catherine D. Vietmeier by devise under her husband's will.

We further find from the evidence that at the time of the death of Charles F. Vietmeier he and Mrs. Vietmeier were the owners of certificates of deposit issued by the Ohio State Federal Savings & Loan Association of the face amount of $14,200.00. We further find that these certificates represented the joint and survivorship accounts of Mr. and Mrs. Vietmeier. We find further that Mrs. Vietmeier after the death of the husband exercised her right as a surviving owner of said certificates and surrendered them to the loan association which issued to her its check for $14,200.00 in payment therefor. With this check Mrs. Vietmeier immediately purchased one certificate of deposit in her own name from said loan association. This certificate of deposit is now a part of her estate.

We are asked to determine if any part of said certificate of deposit also passes under the operation of the "half and half" statute. It is well settled in Ohio that when one of the owners of a joint and survivorship account dies, no part of the account belongs to the estate of the deceased owner, but the ownership of the whole account passes directly to the surviving owner. The administrator or executor of the deceased owner can lay no claim to it. In Re: Estate of Hutchison, 120 Oh St 542; Oleff, Admr. v Hodapp, Gdn., 129 Oh St 432; Sage, Exr. v Fluech, 132 Oh St 377.

Our Supreme Court has held in the case

of **Miller v Miller, 129 Oh St 230,** that, when by operation of the statute, the surviving spouse took under the statute of descent and distribution by reason of her failure to make an election under the deceased spouse's will within the time prescribed, the property so passing passed to the surviving spouse under §§10504-55 and 10504-60 **GC** and that §10503-5 **GC** relating to the "descent" of an estate which came from a deceased spouse, has no application in the distribution of the estate of the surviving spouse.

Our Supreme Court has also held in the case of **Oleff, Admr. v Hodapp, Gdn, 129 Oh St 432,** that a joint and survivorship account entered into by and between two parties, is a contract intervivos, carrying a present, vested interest, and can in no wise be affected, by the laws of descent and distribution. In that case the court held that the survivor of the joint account, who murdered his co-maker of the joint account agreement, was entitled to the whole of the account by virtue of the contract. The court observed that, had §10503-17 **GC** been in effect at the time, it could in no wise have effected his rights to the joint account.

Since the Supreme Court has ruled in the two cases above cited that the succession in those cases was not "by descent", we are of the opinion that those cases support us in our conclusion that the succession of Mrs. Vietmeier to the certificates of deposit in The Ohio State Federal Savings and Loan Association is not effected by our statute of descent and distribution, of which §10503-5 **GC** is a part, but that Mrs. Vietmeier succeeded to the whole of the account, not by descent or devise from her husband, but solely by virtue of her contract with her husband. We therefore hold that the certificate of deposit in The Ohio State Federal Savings & Loan Association does not pass under the operation of the "half and half" statute.

We believe we have covered all of the property which, in our opinion, comes under the operation of the "half and half" statute, and therefore hold that the balance of the property of said decedent does not come within the operation of said statute.

We now come to a determination of the brothers and sisters of Catherine D. Vietmeier and Charles F. Veitmeier and the next of kin of deceased brothers and sisters.

We find from the evidence that Catherine D. Vietmeier had two brothers and two sisters all of whom died leaving children, one brother leaving three children, the other brother leaving one child, one sister leaving three children, and the other sister leaving two children. We further find that these nine children are the only next of kin of the deceased brothers and sisters of Catherine D. Vietmeier, and that all of them are as listed in the petition as nieces and nephews of Catherine D. Vietmeier.

Since all the brothers and sisters of Mrs. Vietmeier are deceased and their next of kin are all her nieces and nephews, who are all on an equal degree of consanguinity to Mrs. Vietmeier, the question presents itself as to whether or not §10503-7 **GC** applies to the distribution to be made to them under the "half and half" statute. Said section reads as follows:

"**Sec 10503-7 GC.** DESCENT WHEN ALL DESCENDANTS OF EQUAL DEGREE OF CONSANGUINITY. When all the descendants of an intestate, in a direct line of descent, are on an equal degree of consanguinity to the intestate, whether children, grandchildren or great-grandchilren, or of a more remote degree of consanguinity to such intestate the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be."

The above section forms a part of our law of descent and distribution and is one of the exceptions provided for in §10503-4 **GC,** which is the principal section covering the distribution and descent of property of an intestate. §§10503-4 and 10503-7 **GC** must therefore be read "in pari materia". **Stocker v Tranter,** 31 N. P. (N.S.) 467 decided by Lamneck, J., since the enactment of the 1932 Probate Code. See also our decision in the Estate of Mary M. Ferson, No. 77052, decided October 22, 1936.

The "half and half" statute reads as follows:

"**Sec 10503-5 GC.** DESCENT OF ESTATE WHICH CAME FROM DECEASED SPOUSE. When the relict of a deceased husband or wife dies intestate and without issue, possessed of any real estate or personal property which came to such relict from any deceased spouse, by deed of gift, devise, bequest or descent, then such estate, real and personal, except one-half thereof which shall pass to and vest in a surviving spouse, if any, of such relict, shall

pass to and vest in the children of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased children. If there are no children or next of kin of deceased children, then such estate, real and personal, except for the one-half passing to the surviving spouse, if any, of such relict, shall pass and descend one-half to the brothers and sisters of such relict, or the next of kin of deceased brothers and sisters, and one-half to the brothers and sisters of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased brothers and sisters."

This section also is an exception to §10503-4 GC.

Our question now is: Is the exception provided for in §10503-5 GC also affected and controlled by the further exception provided for in §10503-7 GC?

Sec 10503-7 GC has a direct connection with §10503-4 GC and makes the course of descent only when the lineal descendants are on equal degree of consanguinity to the intestate. This section deals only with the class of heirs referred to in §10503-4 GC as "lineal descendants." In any given case, if each class of relatives mentioned by name in each subsection of §10503-4 GC were living at the time of the death of the intestate, there would be no need of §10503-7 GC, as they would all share equally by the terms of that statute alone. But all cases are not like that; hence the purpose of the statute. The situation covered by the statute is stated in the first clause of the statute: "When all of the descendants of an intestate, in a direct line of descent, are on an equal degree of consanguinity to the intestate, etc." Instead of the words emphasized in the above quoted section of the statute, the Legislature could well have used the term "lineal descendants" as the meaning is the same. In fact had both sections (§§10503-4 and 10503-7 GC) been written at the same time, the latter term would probably have been employed. §10503-7 GC was copied verbatim from the old statute into the new 1932 Probate Code.

But §8577 GC (now 10503-5 GC) when originally enacted in the year 1877, was a new departure from the old statute of descent and distribution as embodied in the old sections which have been carried over, with the amendments, into the new Probate Code. Were it not for the enactment of this section the relatives of Charles F. Vietmeier would have been entitled to no part at all of the estate of this decedent, Cath-

erine D. Veitmeier. Newton v Harris, 21 N.P. (N.S.) at page 337; Stembel v Martin, 50 Oh St 495.

It must be observed that the property passing under §10503-5 GC is divided in half, half going to the relatives of the relict spouse and half going to the relatives of spouse from whom the property came. Relatives of one spouse can have no interest in the half going to the relatives of the other spouse. It was the real purpose of the statute to give half of the property back to the family, of the spouse who originally acquired the property. Indeed, a long time ago, the statute came to be known as the "half and half" statute, and is still referred to as such. Williams, J., in the case of Stembel v Martin, 50 Oh St at page 519 discusses the reason for the enactment of the "half and half" statute in 1877. He was commenting on the case of Brown v Hunt, 18 Oh St 311, decided before the 1877 enactment, which case held that the property passing to the wife relict could not be considered as ancestral property, and as such, revert to the brothers and sisters of the husband. He says:

"The Legislature appears rather to have accepted the rule established by the decision referred to, and, treating such property was non-ancestral, designed by the act in question, to secure in the future, one-half of the property to the relatives of the deceased husband or wife, and the other half to those of the relict. Such a division appeared to the legislative body to be just and equitable, and that, we think, was the practical end sought and not the creation of a new class of ancestral estates.

"The act undoubtedly establishes a new line of succession, in that, it divides into equal two parts, the property which before its enactment went entirely to the brothers and sisters of the intestate relict, and transmits one to the brothers and sisters of the former deceased husband and wife;" * * *

To the same effect is a more recent expression of our Supreme Court in the case of Karkins v Routson, 115 Oh St page 647, where Day, J., says:

"A consideration of the history of §8577 GC in connection with the earlier statutes of descent and distribution brings us to the conclusion that the purpose of the enactment of §8577 GC was to limit the quantity of property that should descend to heirs at law of the intestate, and to restore, as it were, a part thereof to the heirs at law of the deceased spouse from whom the

property came. It seems apparent that the intent of the Legislature, in the original passage and subsequent amendments of §8577 GC, in the absence of children of such deceased husband or wife or their legal representatives, was to make an equal division between the heirs at law and the next of kin of the spouse from whom the estate came and the heirs at law and next of kin of the surviving and intestate spouse." * * *

We therefore conclude that each one-half is to be treated separately and distinct from the other, and the way in which the one-half is to be distributed to the brothers and sisters, or the next of kin of deceased brothers and sisters of the spouse from whom the estate came, should not be affected by the degree of relationship to the intestate relict of those entitled to the other half. It is also our conclusion that the converse of this proposition is also true. In this conclusion we differ from the reasoning upon which the decision in **Newton v Harris, 21 N.P. (N.S.)** 329 was based. In that case the heirs of the spouse from whom the estate came stood in equal degree of consanguinity, to-wit, nephews and nieces.

In our case, however, it is the nieces and nephews of the intestate relict who stand in the same degree of consanguinity to such intestate. We have been unable to find any case exactly in point in which this question has been raised. However, we have the case of **MacMahon v MacMahon, 3 Abs 668,** decided by our own Court of Appeals in 1925, where the equal degree of consanguinity (nieces and nephews) occurred on the side of the deceased spouse from whom the estate came. The reported opinion of the court is not complete, but we were fortunate in obtaining the original opinion from our Court of Appeals. Since the opinion has not been fully reported and since we are of the opinion that the reasoning of the court in that case applies also to the case at bar, we will copy the opinion in full, omitting only the quotation of the statutes. The case is as follows:

"BY THE COURT: (Allread, Ferneding and Kunkle, JJ., concurring).

"This is a question of descent and distribution. Benjamin N. Huntington was the original owner. He died in 1903 intestate and without issue and the estate descended to his wife, Sarah J. Huntington under §8575 GC. Sarah J. Huntington died in 1924, intestate, and without issue, and the real estate in question descended under the terms of §8577 GC, one-half to the collaterals of her blood and one-half to the collaterals of her deceased husband. There is no controversy among the decedent's kindred as to the one-half of the estate taken by them.

"The controversy is among the representatives of the blood of the deceased husband.

"These are the facts: The brothers and sisters of the deceased husband were dead and there were eight nephews and nieces to whom that portion of the estate descends. Seven of these are children of one brother and one is the child of another brother of the deceased husband.

"The question is, shall the nephews and nieces take **per stirpes** or **per capita?** The descent depends primarily upon §8577 GC, which is as follows: .(Statute not copied).

"Counsel for the appellant cite and rely upon §8581 GC, which reads as follows: (Statute not copied).

"It is claimed on behalf of appellant that §8581 GC should be read into and made a part of the construction of §8577 GC and that the various nephews and nieces of the deceased husband should share in the estate **per capita.**

"The question has been fully and ably argued by the respective counsel. §8577 GC standing alone would justify the **per stirpes** theory, and in our judgment, there must be some logical application of §8581 GC to lead that statute into the former. §8581 GC originated in the early history of our state. The original statute was enacted in 1805 and has been in force continuously until the present time. This statute represents a principle which is fully in harmony with our institutions and should be liberally interpreted, but we are not called upon to adopt a strained or unnatural construction of the language employed. The intestate here is Sarah J. Huntington and the decedent, so far as it relates to the blood of her deceased husband, is statutory. There is therefore no consanguinity between the decedent and the brothers and sisters or their representatives of the deceased husband. §8581 GC cannot apply to the descent from the intestate to the collateral kindred of her deceased husband.

"It is, however, asserted that the statute can be applied in determining the collateral kindred of the deceased husband and the portions to which they would be entitled.

"Undoubtedly the Legislature in the en-

actment of §8577 GC might have so provided. If it had been provided that the one-half of the intestate's estate should go to the heirs or representatives of her husband there would have been some ground for contending that §8581 GC would apply in determining who were the representatives of the deceased husband and the proportions to which each of said representatives would be entitled. Instead of doing this, however, the Legislature vests the estate where there are no direct issue in "the brothers and sisters of such deceased husband or wife from which such personal or real estate came or their legal representatives."·

"The Legislature by not going back to the deceased husband evidently undertook to establish a new descent in the brothers and sisters of the deceased husband and §8581 GC would not apply to separate or qualify the estate expressly vested in the brothers and sisters of the deceased husband. The Legislature undertook to cut across lots and create the spring head of a new consanguinity not in the representatives of the deceased husband but in the brothers and sisters of such deceased husband. §8581 GC could therefore apply to the descent only after it leaves each of the brothers and sisters. We think that the statute cannot reasonably be held to confuse or commingle the estates expressly granted to each of the two brothers so as to make one group in the decedents of both. We therefore hold that the seven children of Pelatiah W. Huntington would take the undivided one-half and the son of Benjamin Huntington, Sr., would take the other one-half of the moiety of the estate which descended under §8577 GC to the kindred of the deceased husband. Decree accordingly."

The last paragraph of the above opinion is a clear statement of the situation in that case, and it is our opinion that the same may be applied with equal force to the facts in this case. The "half and half" statute does not provide that one-half of the property should go to the next of kin of Mr. Veitmeier; neither does it provide the other half should go to the next of kin of the decedent Mrs. Vietmeier, but it does provide that this one-half should go to the brothers and sisters of Mrs. Vietmeier, or the next of kin of deceased brothers and sisters. The statute creates "'the spring head of a new consanguinity" in each of the brothers and sisters of Mrs. Vietmeier, so that the property to which each brother and sister would be entitled, descends to each one's next of kin, to the exclusion of

the next of kin of the other brothers and sisters.

We are of the opinion that these statements are open to no other interpretation. If §10503-7 GC did control §10503-5 GC, we might, for example, have this anomalous situation: If Mrs. Vietmeir would have left, in addition to these nieces and nephews, a parent living, who of course, would be her only lineal descendant under the statute, the existence of such parent would prevent §10503-7 GC from controlling §10503-5 GC, although such parent would share nothing in the distribution of the property to be made under §10503-5 GC. We cannot conceive that the Legislature intended that such an absurd situation might exist.

Since these statutes were re-enacted as part of the new 1932 Probate Code, we have had to construe them together, as part of one harmonious act of the Legislature. Construing them as we have, we find in them no inconsistency.

Therefore, until the Legislature sees fit to amend §10503-5 GC, we are forced to hold that the property passing under the "half and half" statute to the nieces and nephews of Mrs. Vietmeier is to be divided in four parts and not nine parts, since the nine nieces and nephews represent the next of kin of four brothers and sisters of the decedent, Mrs. Vietmeier.

We now come to a determination of the brothers and sisters of Charles F. Vietmeier and the next of kin of deceased brothers and sisters. We find from the evidence that they are all as listed in the petition, being two sisters, twelve nieces and nephews and three grand-nieces of Charles F. Vietmeier. No question is raised concerning the distribution to them under the "half and half" statute. However, the widow of the deceased nephew who left the three grand-nieces of Charles F. Vietmeier, was made a party defendant to this suit, but we hold that she is not to be classed as one of the next of kin, under the authority of **Russell v Roberts, 54 Oh Ap 441, 449 (23 Abs 435).**

Finally we are asked to determine the heirs of the decedent, Catherine D. Vietmeier, and how they share in the distribution of her general estate. As we have heretofore found, Mrs. Vietmeier left only nine nieces and nephews and these we find to be her only heirs at law. Since they are all on an equal degree of consanguinity to

Mrs. Vietmeier, the intestate, ██ they all share equally in her general estate, by virtue of the provisions of §10503-7 GC.

This is, therefore, a case in which the nieces and nephews of the intestate share **per stirpes**, the property passing to them under the "half and half" statute, and share **per capita**, the property passing to them under the general statute of descent and distribution.