**HOLT v MILLER et**

Ohio Appeals, 2nd Dist, Franklin Co

Decided Oct 25, 1937

462

Stevenson & Stevenson, Columbus, and Carlisle C. Dollings, Columbus, for defendant-appellant.

H. B. Holmes, Columbus, T. E. and J. M. Lewis, Columbus, for appellees.

A. L. Richards, Columbus, for Clinton Howard Miller appellee.

## OPINION

By HORNBECK, J.

This is an appeal on question of law. The action in the Common Pleas Court was in partition and required a construction of the will of Enoch Miller, deceased.

The cause was submitted on an agreed statement of facts, the pertinent parts of which are that the testator died in June, 1892, leaving surviving his son, John Miller. The son John had a wife, Sarah, and two children, Clinton Howard Miller and Pearl Miller Holt. John's wife, Sarah, died after the testator and John then married again; his second wife was Bertie Postle Miller, defendant-appellant. Pearl Miller Holt, daughter of John Miller, died prior to her father, who died June 25, 1936, leaving his widow, his second wife, Bertie Postle Miller, one son, Clinton H. Miller, and five grandchildren, sons and daughters of Pearl Miller Holt, deceased, as follows: Viola Holt, Clyde Holt, Sarah Catherine Holt, Frank Holt, Jr., and Enoch Ellis Holt.

In Item Two of the will of Enoch Miller he gave the residue of his chattel estate after payment of his debts to his wife, Ann Miller, for and during her natural life or so long as she remained his widow, she being given power of disposition of his chattel property and of reinvestment and the use of the proceeds for her support or otherwise. At the death of his wife any remaining portion of the chattel estate then left was to be divided equally among his three sons, Enoch, John and Charles Miller. He also gave his wife 59½ acres of land known as the Calvin Farm for and during her natural life or until her marriage, "at which time the same shall pass to and vest in my son Charles Miller during his natural life and then to his heirs in fee simple." The provisions made for his wife were in lieu of her dower. He gave to his son Enoch Miller for and during his natural life 50 acres of land, known as the Frisby land and "at his death the same shall pass to and vest in fee simple in his heirs."

In Item Five, which is the item for construction here, he provided that:

"To my son John Miller I give during his natural life the farm known as the Galloway farm and being the same farm purchased by me from Samuel Galloway, of Columbus, Ohio, containing about fifty-five acres. At his death the same shall pass to and vest in fee simple in his heirs."

It is the claim of Clinton H. Miller, son of John Miller, deceased, that he is entitled to one-half interest in the 55 acres of land mentioned in Item Five of the will. It is the claim of Viola Holt, Clyde Holt, Sarah Catherine Holt, Frank Holt, Jr., and Enoch Ellis Holt, children of Pearl M. Holt, deceased, and grandchildren of John Miller, deceased, that they collectively are entitled to the other one-half of the land mentioned in Item Five or each one-tenth interest thereof. It is the claim of Bertie Postle Miller, defendant-appellant, that as the widow of John Miller, deceased, she is entitled to one-third interest in the land mentioned in Item Five of the will.

The parties in their agreed statement of fact succinctly set forth the question in dispute, namely, "whether the widow of John Miller is entitled to inherit under the provisions of the will of Enoch Miller and as provided for in Item Five of the said will; or stating the question in another way, can the widow of John Miller, who held a life estate in the premises;

be considered an heir of John Miller as contemplated in Item Five of the will"?

The trial judge was of the opinion and held that Bertie Postle Miller, widow of John Miller, deceased, took no interest whatever under the will and that Clinton H. Miller is entitled to one-half of the land set forth in Item Five and the grandchildren of Pearl Miller Holt took the other one-half thereof.

It will be observed that at the time of the execution of the will of Enoch Miller his son John Miller was living with his first wife. Thus it appears that Bertie Postle Miller, John Miller's second wife, was never known to the testator and would not, had she died during the life of testator, have been an heir of John Miller unless he had died without children. By the new Probate Code Bertie Postle Miller was placed in the status of an heir of her husband, John Miller, upon his death, which was subsequent to the effective date of the code.

We have been favored with the decision of the trial judge, who was of the opinion that in the use of the word "heirs" in Item Five of the will the testator meant lineal descendants of his son John Miller; that at the time of the execution of the will the widow of John Miller would have no interest in the life estate of John Miller and could not be his heir as to the property in question. Since John then had children testator's intent in using the word "heirs" was to name the children of John Miller.

This claim is urged by the appellees, together with the contention that as the testator gave his own wife but an interest in his personal property for life with the right of disposition as needed and a life estate only in 59½ acres of land, it could not have been his intention to give John's widow a fee in any part of the life estate devised to John.

It is the claim of the appellant that the word "heirs" as employed in Item Five of the will has a well-defined meaning in the law and that there is nothing in the instrument or extrinsic thereto which will permit any variation from the technical interpretation of the word.

The case has been well briefed and we are cited to many cases which are germane to the propositions involved. In consideration of the construction of any will there are certain principles which are so well defined and so well understood by the Bench and Bar that it is useless repetition to quote at length from the cases, restating the principles. We shall, there-

fore, not attempt to analyze all of the cases which are cited and which we have read, but advert only to those which have special application to the facts in this case.

One principle involved is well stated in Carter v Reddish, 32 Oh St 1, as follows:

"Words in a will are to be understood according to their ordinary, natural, and legal signification unless it is manifest from the context, or from other provisions in the will, that the testator has used them in a different sense, * * *."

And the other principle with which we are confronted is announced in the early case of Jones v Lloyd, 33 Oh St 572:

"The term 'heirs', when used in a will, is flexible and should be so construed as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the provisions of the will."

Keeping these two principles in mind, what did Enoch Miller mean by Item Five of his will? He gave the land therein mentioned to his son John Miller for his natural life and at his death to his (John's) heirs in fee simple. Sec 10504-70 GC, formerly §10578 GC, provides:

"When lands, tenements, or hereditaments are given by will to a person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall vest an estate for life only ir such first taker, and a remainder in fee simple in his heirs."

The language of Item Five and of the Section just quoted is so nearly alike in meaning that there can be no differentiation.

Inasmuch as the widow of John Miller clearly comes within the designation of an heir of her deceased husband, John Miller, she must be included within the class thus defined unless we can find something in the will or in the facts extrinsic thereto which requires a different construction. In no item of the will is the term "heirs" modified or qualified in any particular. The exact language is used in the devise of a life estate to Charles Miller and then to his heirs in Item Three and in the devise to Enoch Miller for his natural life and then to his heirs in Item Four.

Of course, the term "heirs" may mean children, issue, lineal descendants if it ap-

pear that it is used with such intendment but no such conclusion will be permitted from the language alone of the items which we have just quoted, nor is there anything appearing in the agreed statement of facts which can be related to any one of the items quoted so as to modify or change the technical meaning of the word "heirs" as there employed. Nor is the accepted meaning of the term "heirs" changed by the extrinsic evidence that the son John was married a second time and that as the testator gave his own wife a life estate only in a part of his estate it is therefore improbable that he would give a second wife of his son a fee in a share of the estate. Such conclusion is non sequitur. It may tend to show an inequality as it would now be considered but this is not sufficient to change the fixed purpose of the testator as required to be found by the unexplained use of the word "heirs."

A testator has the right to make disposition of his property by will as he sees fit, however inequitable it may be. Every effort will be made to determine his intention but when he employs technical language with a fixed meaning and uses no other expression in his will and no fact intrinsic thereto apears which requires a different interpretation, the courts must give effect to the terms of the will without modification.

As is said in Wright v Wright, 118 N. Y. S., 994:

"Courts can not devise any scheme for the purpose of spelling out a new theory by which it can be said that the testator intended something which his language shows that he did not intend."

And in **Hamilton v Rogers, 38 Oh St 255;**
"The intent of a testator is discovered not only by what he has said but by what he has forborne to say."

The testator having used the word "heirs" without qualification or modification and with nothing outside the will to disclose a purpose to change its meaning, it is required that it be given its technical definition, namely, such persons as would inherit from John Miller according to the law of descent prevailing at the time of his death, had he died intestate and was seized in fee of the real estate devised in Item Five.

The use of the word "heirs" by the testator without qualification or modification compels the conclusion that he meant only those who would answer that description on the death of John Miller, the life tenant. His widow under the law is of that class.

The cases in Ohio nearest in point to the facts in the instant case are those which treat of the right of adopted children or a designated heir. It may well be urged that the maker of a will who speaks in the instrument of the heirs of his children, would not contemplate the inclusion of their adopted children, or one designated as an heir by a child of the testator. However, such construction has been adopted by our courts, in **Smith v Hunter, 86 Oh St 106,** and **Laws v Davis, et al, 34 Oh Ap 157.**

In Smith v Hunter, **supra,** the testator, made his will in 1840 and died in 1841. He left his whole estate in trust for the benefit of his two children, that part held for the sons to be deeded to them in fee simple upon attaining their majority. That portion held in trust for the daughters upon their becoming of age was to be set apart but still held in trust, the daughters to have only the rents and profits during their lives "with fee simple to the heirs of said daughters." One of the daughters was Sophia, who was but ten years of age when the testator died. She afterwards married and adopted a child. The court held that the adopted child of Sophia was included in the designation "heirs at law" in the will and took as an heir at law of the daughter Sophia. Counsel in the cited case made the argument here presented that the testator did not have a specific intention to pass any of his estate to the daughter's adopted child, who was unknown to the testator when he made his will and when he died. Judge Shauck in the opinion at page 114 discussing this claim, says:

"They (these considerations) may also start the conjecture that if the testator had anticipated the relation of parties which the case now presents he would have used different language to designate the persons to whom this fund should pass."

And at the bottom of page 115:
"Terms limiting the sucession to the daughter's heirs at law, who should be of her blood, were omitted by the testator. If the court should supply them it would

be amending his will rather than construing it. However confidently we might follow counsel in the conjecture that the testator would not have used such terms if he had foreseen all that has now occurred, we should still be admonished that in ascertaining the meaning of a testator it is of first importance to assume that he meant what he said. The meaning of the phrase 'her heirs at law' which the testator used to indicate his intention has not been changed since he used it for that purpose."

And at the bottom of page 116:

"To the validity of the claim of the adopted daughter, it is not necessary that the testator should have had the particular intention that the fund should pass to a child by adoption. It is sufficient that she is the person designated by the law as the heir of the daughter and is thus within the terms of the gift over, the fund having accomplished the testator's dominant desire that the daughter should have an assured support during her life."

In Laws v Davis, et al, **supra**, the language of the item of the will under consideration was "heirs at law." We can mark no distinction between "heirs at law" and "heirs" and it was there held that the language employed in the will, "heirs at law," did not exclude an heir designated by the daughter of the testator the life tenant. The item under consideration in the will provided:

"I hereby * * * devise to my daughter Eleanora Bradford * * *" (a certain lot and parcel of land), "to be held by her during her natural life and at her death to her heirs at law in fee."

At the time the testator died the daughter, Eleanora Bradford, had no children but later, under §8598 GC, designated Eleanora Bradford Davis, as her heir at law. Among the arguments made by counsel in the cited case we find one almost identical with that urged by certain of counsel in this case, "that, upon the death of a testator James Bradford, under §10578 GC, subject to the life estate of Eleanora Bradford, there was a fixed remainder in the property covered by Item Fourth of the will in the heirs at law of Eleanora Bradford then in being and that no heir at law could be added to this class after the death of James Bradford, the testator."

Neither in the Smith nor the Bradford

will did or could the testator have known the specific person afterwards held to be an "heir" under the will, nor was the heir a blood relative of the life tenant. The person held to be the heir under the will answered that description by virtue of law requiring her to be so classified and in view of the restricted and unexplained use of the word.

In Youngblood v Youngblood, **11 O. C. C.** (N.S.), 276, affirmed by the Supreme Court without report, the testator bequeathed his residuary estate to the "legal heirs" of his deceased brother without other or further designation as to who were intended as his beneficiaries and by his will directed that such residuum 'shall fall to and be divided in equal shares among the legal heirs of my deceased brother, and I hereby bequeath and devise the same to them'; and at the time of making said will one of the sons of the testator's deceased brother was dead, leaving heirs. It was held:

"That all persons who at the time of the death of the 'deceased brother' of those who answer the description of 'legal heirs' of said deceased brother at the time of such brother's death are entitled to share in such a residuary estate in equal proportion. * * * ."

At page 279 Judge Donahue says:
"While it is true that in the construction of a will the main object to be arrived at is the intention of the testator, yet, a court is not authorized to say, that the testator intended other than the clear and manifest meaning of the words used to express his intention. He is supposed to have known the legal effect and import of the words used, and to have intended that which they express, notwithstanding it might seem that he had inadvertently used these words.

"It is only where there is an ambiguity, and uncertainty in the words used, or a contradiction in the terms that a court is justified in attempting to determine the intention of a testator in order to determine the purpose and construe the language of the will."

We are cited to **Cultice, et al v Mills, et al.**, 97 Oh St 112, Stewart v Powers, 9 O. C. C., 143, and many other cases supporting the claim of appellees that the word "heirs" in the instant case should be construed as lineal descendants of John Miller. We have given consideration to these

and all cases cited and learn that without exception the courts found an ambiguity in the wills under consideration and from the context or from extrinsic evidence were convinced that the term "heirs" or similar expressions were used in some other than their restricted technical sense.

Cultice v Mills, supra, was considered by Judge Geiger, now of this court, in the reported case of Mills v Mills, et al., 20 O. N. P. (N. S.) at page 501, and the judgment reached was affirmed both in the Court of Appeals and the Supreme Court. The principles announced in Mills v Mills are those to which we have directed attention and though the will there under consideration required a different construction of the word "heirs" than we have reached, there is no conflict whatever between our determination and the opinion of Judge Geiger.

We therefore hold that Bertie Postle Miller takes in fee simple as an heir of John Miller under Item Five of the will of Enoch Miller, deceased, and is entitled to one-third, Clinton H. Miller, one-third, and the children of Pearl Miller Holt, deceased, one-third of the share which pass to John Miller for his life under said item of the will.

Judgment reversed and judgment accordingly.

BARNES, PJ, and GEIGER, J, concurring.

## ON REHEARING

Decided Dec 16, 1937

By THE COURT:

Submitted on application of Clinton Howard Miller for rehearing.

The application concedes that it is filed after rule but suggests an unusual situation, namely, that our judgment is in conflict with the decision of the Court of Appeals of the First District in Miller v Miller, Admr, et al, 49 Oh Ap 220, 3 O.O., 170. However, this case was admitted by the Supreme Court and there decided, 129 Oh St 230, 2 O.O., 45, resulting in an affirmance of the judgment of the Court of Appeals for the same reasons as announced in the opinion of the Court of Appeals. It thus follows that if there is conflict between our judgment and the decision in the Miller case in the Court of Appeals of the First District, there is likewise conflict between our decision and that of the Supreme Court. If this be true, we would readily reconsider our decision and reverse our former holding.

However, a careful examination of the opinions in the case of Miller v Miller, Admr., et al., is convincing that they do not require a different holding in this court. Without undertaking to state the facts, which were somewhat involved, suffice to say that the courts in the Miller case were not determining whether or not a widow may in Ohio at this time answer the general description of heir or heir-at-law, but determining the manner in which the widow took in the Miller case. The conclusion of the courts was that Clara J. Miller, widow of Harry B. Miller had taken from him by reason of failing to make election under his will not under §10503-4 GC which is the general statute of descent and distribution, but by virtue of §10504-55 GC, which limited her to not more than one-half of her former husband's estate. The Supreme Court specifically held in the situation there appearing that §10503-4 GC came into play as

"Merely definite or descriptive of the share to be taken by the surviving spouse within a limitation of not to exceed one-half of the estate."

The court in nowise held that a widow who did take under §10503-4 GC would not be an heir. On the contrary, the court at page 235-6, speaking through Zimmerman, Judge, says that:

"By its terms this section (10503-4 GC) is limited to the distribution and descent of property when its owner dies intestate. Secs 10504-55 and 10504-60 GC, are concerned with the property of an owner who dies testate. They give the relict of a testate property owner the right to reject his or her will and to take a share of his or her property which may often be less than if the owner had died intestate and the taking was clearly under the statute of descent and distribution."

"The argument is therefore persuasive that the phrase 'under the statute of descent and distribution' appearing in the last mentioned sections is not there used in such sense as to place the relict directly under the operation of §10503-4 GC, but rather in the sense that such section shall be used as a measuring stick to determine the amount of the estate which shall be taken, within an absolute limitation of

not more than one-half as prescribed by §10504-55 GC."

Judge Ross in the opinion in the Appellate Court, page 226, marked the distinction to be made because the widow had taken under §10504-55 GC, etc., instead of §10503-4.
He there stated:

"Were the relict to take under §10503-4 GC by reason of the intestacy of her deceased spouse, an entirely different situation might be presented."

It seems to us conclusive that the courts recognized that one who succeeds to an interest under §10503-4 GC, or 10503-5 GC, would take by descent which would place him within the designation of "heir."

Without further discussion, we are of opinion that no conflict appears in the Miller judgments and our decision in this case. The application for rehearing, will therefore be overruled.

BARNES, PJ, HORNBECK and GEIGER, JJ, concurring.