**GOODFELLOW v WILSON et**

Ohio Appeals, 2nd Dist, Clark Co.

No. 414.  Decided June 15, 1940.

H. A. Middleton, Toledo, for plaintiff-appellee.

George E. Hagenbuch, Cleveland, and Cole & Hodge, Springfield, for defendants-appellants.

## OPINION

### By GEIGER, J.

This is an appeal on questions of law from a judgment of the Probate Court in favor of plaintiff.

The legal question for determination appears from the pertinent parts of the agreed statement of facts. Edgar Goodfellow died November 30, 1938, testate, leaving surviving him his widow, the plaintiff. The Goodfellows had no children. Nancy T. Goodfellow, mother of testator, died March 20, 1938, eight months before the testator. The testator left no children, brothers or sisters or parents surviving him or lineal descendants of any of them. All the defendants, excepting the Fifth Union Trust Company of Cincinnati, Ohio, trustee, are lineal descendants of testator's paternal or maternal grandparents. The will of decedent with two codicils was probated December 21, 1938. Testator by the will of date October, 1928, by Item II thereof, made a specific bequest of $5,000.00 to his mother, by Item III gave certain personal effects to his wife, and by Item IV the residuary estate was placed in trust, and the First National Bank & Trust Company of Springfield, Ohio, named trustee. Testator directed that the trustee pay to his widow the sum of $50.00 per week, and gave it authority in its discretion to pay a greater sum for the benefit of the widow, if required. The item further provided that upon the death of Stella Goodfellow the trust should terminate and the trustee pay, transfer and deliver over the trust funds to testator's mother, Nancy T. Goodfellow. The will made no other or further provision.

The first codicil of date May 29, 1931, revoked the $5,000.00 bequest made by testator to his mother, and provided that it should become a part of his residuary estate and pass by the terms of his will.

At the time plaintiff filed her petition she had not made her election under

§10504-55 GC, and sought a declaratory judgment determining her rights under the will. Subsequently, plaintiff, as surviving spouse of defendant, made her election to take under the statute of descent and distribution.

It is the claim of the plaintiff, which was supported by the trial judge, that, by virtue of her election under §10504-55 GC, she took one-half of decedent's estate, and that by virtue of §10503-4(4) GC, she took the whole of the remaining one-half of said estate as the surviving spouse. The bequest to testator's mother having lapsed, there are no children of testator or their lineal descendants and no surviving parent or parents of the intestate.

It is the claim of defendants-appellants that the widow by her election under §10504-55 GC, is limited to not to exceed one-half of the net estate of decedent.

We have been favored by the extended and well considered decision of the trial judge, who was of opinion that the case of **Miller v Miller, 129 Oh St 230**, was decisive of the question presented in favor of the plaintiff, and that it inferentially overruled the case of **Zizelman v Mayer, 27 Oh Ap 512**, upon which defendants placed considerable reliance.

**Sec. 10504-55 GC,** provides that after the probating of the will a citation shall issue to the surviving spouse, to elect whether to take under the will or under the statute of descent and distribution, **"but in the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate".**

It is agreed that the spouse here elected "to take under the statute of descent and distribution". The question is—does the further language "such spouse shall take not to exceed one-half of the estate" define and limit the extent to which she may take at all, or—is she entitled as an heir-at-law under §10503-4 GC, to take all of the

remaining one-half of the estate of decedent? Plaintiff's claim is that upon the death of decedent's mother the residuary remainder given to her by the will lapsed, and that after the election of plaintiff to take her share under §10504-55 GC, the whole of decedent's estate became undisposed of and was intestate property, and that the devolution of the other half was controlled by §10503-4 GC.

Counsel for the respective parties present considerable argument purposed to establish that the intent of the testator may be determined from the language of the will and codicils, the circumstances attending the execution and subsequent thereto.

We are satisfied that, on the question which we are called upon to decide, we receive no assistance whatever from the will itself. It may be urged with much force that the testator, having spoken specifically respecting the extent to which he desired his widow to share in his estate it would be foreign to his intention to permit her to receive a greater part. On the other hand—it is said that testator indicated a purpose to give his estate to his wife because the relatives who now claim are only remotely related to him and he revoked the $5,000.00 bequest to his mother, placed it in his residuary estate, made no addition to or modification of his will after his mother's death. Both of these claims are conjectural and not at all helpful in the problem with which we are confronted.

The matter to be determined is a question of law and although the assignments of errors are numerous they may be encompassed in the proposition that the judgment is contrary to law.

Much time and attention in the later briefs are given to a controversy on the question of the intestacy of decedent.

There is no question that he died testate, but the remainder in his residuary estate having lapsed it must pass as

intestate property, and if the widow is not restricted by her election, she will also take as an heir-at-law.

(To this point the above decision was written by Hornbeck, PJ., who now finds himself unable to concur in the decision reached by the majority of the Court. From this point the opinion is written by Geiger, J., Hornbeck, PJ. writing a dissent).

The proper solution of the question presented in this case depends upon the correct interpretation of §10504-55 GC, relating to the election by a surviving spouse. There is no difficulty with the section except as to what may be the correct interpretation of the provision "but in the event of election to take under the statute of descent and distribution **such spouse shall take not to exceed one-half of the net estate**". Must this provision be interpreted as controlling the final devolution of the estate of a testator who has made a provision for the surviving spouse, which is specifically rejected, as in this case?

**Sec. 10504-61 GC,** provides that if the surviving spouse **elects to take under the will such spouse shall be thereby barred of all rights to the intestate's share of the estate and shall take under the will alone,** unless it plainly appears that the provision was intended to be in addition to the intestate estate. **The spouse in this case refused to take under the will.**

Before we can correctly determine the effect of the positive provision of §10504-55 GC, that upon election to take under the statute such spouse shall take "not to exceed one-half of the net estate", we must determine, if possible, to what the "net estate", mentioned in the statute, refers. Does it mean the "net estate" that is disposed of by the will. or does it mean the entire "net estate" of the testator—irrespective of whether he has attempted to or has in fact disposed of his entire estate. or has, due to lapses or for other reasons, in fact only disposed of a part

of his estate leaving the rest to be disposed of as the law provides in case of intestate property?

The court below in his very carefully considered opinion states, in substance, that it is very difficult for him to conceive why the testator would want his estate to go to very remote relatives rather than to his wife who had lived with him for many years and assisted him in the accumulation of his wealth. The court was of the opinion that the case of **Zizelman v Mayer, 27 Oh Ap 512,** is no longer the law of Ohio, in view of the decision of the Supreme Court in the case of **Miller v Miller, 129 Oh St 230.** The court arrives at the conclusion that by virtue of Miller v Miller, there is no question that the wife takes one-half of the net estate as surviving spouse and not under the statute of descent and distribution— §10503-4 GC. The court concludes that under the case of **Oglesbee v Miller, 111 Oh St 426,** the widow is an heir of her deceased husband.

To whatever extent the judgment of the court below may have been influenced by his conclusion that the testator did not intend to prefer his distant relatives over his living wife, that conclusion would, in our judgment, be without weight, in view of the positive provisions of the statutes that she should, under the condition of her election, be confined to one-half the net value of the estate.

The view of the court, however, does give us occasion to examine the legislative intent.

There is no question that the testator died testate, but the remainder of the residuary estate having lapsed, it must pass as intestate property.

In **Miller v Miller, 129 Oh St 230,** the court holds that the phrase used in §10504-55 and §10504-60 **GC,** does not mean that the surviving spouse is actually placed within the operation of the statute of descent and distribution, but is used as merely definitive or descriptive of the share to be taken by the surviving spouse within a limitation of not to exceed one-half of the estate, and that the actual taking of a share by the surviving spouse is under

§10504-55 and §10504-60, and that §10503-5 relating to the descent of an estate has no application.

It will be at once perceived that the case of Miller v Miller does not have under examination a case such as the one at bar, but was exclusively concerned with the question as to whether the estate passed under the half and half statute.

It is proper to consider the fact that the election statute is within the chapter covering wills, and might, therefore, well be considered as having reference exclusively to the disposition of testate property. If there be other legal principles relating to devolution of property, whether testate or intestate, which conflict with the statutory provision as to the right to inherit not exceeding one-half of the estate, then we can properly resort to such principle—especially if we are dealing with intestate property.

It is well to examine fundamental principles which have been followed in this state for many years.

**Crane v Doty, 1 Oh St 279,** contains an interesting discussion of the principles which control the devolution of property. It is there held—

"A testator can not, by any words of exclusion used in his will, disinherit one of his lawful heirs, **in respect to property not disposed of by his will.** Such words can not be used to control the course of descent, so as to carry the property to his other heirs.

They can not be used to raise an estate by implication in favor of his other heirs; there being no attempt in the will to dispose of the property or to create any interest therein." (Emphasis ours).

The case is interesting. Briefly, the testator made certain bequests to his children. The will contained no residuary clause. After the payment of the debts and the specific bequests, there remained a considerable amount of his estate undisposed of. The testator provided as to certain of his children that after being paid the specific bequest they should receive "**no more of my estate**". The court points out that the law has always allowed to every person of mature age absolute dominion over all he may possess, to dispose of it by last will and testament, saving the rights of the widow and creditors, but it is very clear that even the expressed intention of the testator can not be regarded in the absence of such disposition. If the owner fails to designate who shall succeed to his property, the law steps in and supplies the omission and casts it upon the heir-at-law.

"That the expressed intention of the testator that his heir should not take, can not be regarded, in the absence of any other disposal of the property, seems to have been early settled in England * * *. It may be disposed of by will; but if it is not, the law disposes of it to all the children alike. All dominion of the owner over it ceases with his life. To allow a testator to leave his property undisposed of, and by will to control the course of descent and distribution, would be to allow him to repeal the law of the land. It must go by devise or descent; and in either mode it goes entirely uncontrolled by the other; and it is impossible to conceive of an estate created by a mixture of the two."

We will not quote further from this case as we deem it of sufficient importance to receive definite attention.

See **Bane v Wick, 14 Oh St 505.**

This case is of much interest and so nearly fits the situation that we refrain from quoting, with the hope that it may be read. We realize that it was decided before the limitation now in §10504-55, and that it may well be urged that it is without authority under the present statutes. Nevertheless, we are of the opinion that the principles enunciated are applicable and that its authority may not be likely disregarded.

**Mathews v Krisher, 59 Oh St 562,** opinion by Shauck, J., holds the stat-

ute of descent operates upon all intestate property, and the course which it indicates can be changed only by a testamentary disposition. This case is also of prime importance as establishing principles which seem to us to apply to any intestate property that may be involved in this action.

Oglesbee v Miller, 111 Oh St 426, holds:

"2. All intestate property passes by virtue of and in accordance with the statute of descent and distribution; the course thereby prescribed can be changed only by testamentary disposition. (Mathews v Krisher, 59 Oh St 562, approved and followed.)

3. Personal property undisposed of by will passes to the husband, where the testatrix left no children or their legal representatives, even though by provision of the will such property had been bequeathed to the husband for and during his natural lifetime, or so long as he remained unmarried."

These cases seem to us to be of compelling importance in the devolution of intestate property such as that involved in this estate. We would have no difficulty in finding that they were applicable and would cast the intestate property of the testator upon his spouse if it were not for the limiting provisions of §10504-55 GC, to the effect that such spouse shall take "not to exceed one-half the net estate".

If the Legislature had intended that the limitation relating to the widow's election should render inoperative the principles of the last two cases and those further cited, it would have so indicated in the amendment.

We cite the following cases as appropriate to the question—some sustaining our position and some opposing it:

Miller v Miller, 49 Oh Ap 220.

Armstrong v Armstrong, 11 O. C. C. (NS) 474.

Zizelman v Mayer, 27 Oh Ap 512.

We find an interesting editorial by Lawrence U. Jeffries in the Cincinnati Law Review, Volume 2, p. 310, as to the effect of an election to take against a will on a relict spouse's right as an heir-at-law. The writer analyzes and criticizes the decision of Zizelman v Mayer, 27 Oh Ap 512. While this is not a decision of a court, it presents very cogent reasons why the case cited is not a correct exposition of the law.

We think that the Legislature in amending the statutes so as to comply with the new Probate Code and the new statutes of descent and distribution, placed the limitation of one-half the net estate in the section to take the place of those provisions which have been extant in reference to the effect of rejection of a provision of the will which at various times gave the widow the right to be endowed of the lands of her husband upon rejection of the provisions of the will or the right to take that portion of the estate had the husband died intestate leaving children. Due to the fact that dower has been abolished, the provision as to what the widow would take has been altered to harmonize with the statute as amended. At the time of the decision of Miller v Miller, the effect of the failure to elect within the statutory time was a conclusive presumption to an election to take under the statute of descent and distribution. Since that case the statute (§10504-60) has been amended so that it now provides that if the spouse fails to make the election such spouse "shall be conclusively presumed to have elected to take under the will". In other words, when Miller v Miller was decided, the presumption was that the spouse failing to elect should be conclusively presumed to have elected to take under the statute of descent and distribution. Now the presumption is that she takes under the will.

Should we hold that the remote next-of-kin should inherit the balance of the property after the wife has taken one-half, we are confronted with numerous inconsistencies. Sec. 10503-4 GC, subdivision 4, provides that if there are no children and no surviving parent

then "the whole to the surviving spouse". Is this section to be discarded because of the provision in the election section that the spouse should take only one-half of the net estate? That would be to repeal the provisions of §10503-4, and change the devolution of the property through an act of a disappointed spouse rather than by the act of the testator himself. This would be contrary to the holding in **Crane v Doty, 1 Oh St 279,** where the testator definitely endeavored to limit the amount of the estate to go to certain of his children.

The question might arise as to what would have happened had the widow in this case elected to take under the will. To whom would the property which became intestate by the death of the testator's mother have gone? Certainly there could have been no intention upon the part of the testator that it would go to a group of heirs remotely related to him who were in a classification of §10503-4, more remote than subdivision 4, which provides that it should go to his wife.

His relatives now seeking one-half of the estate are remote, none being closer than second cousins. His wife might have been, as a matter of fact, his own second cousin. Could it then be said that because of this exclusive provision of the statute that she could not inherit from her husband on account of consanguinity which made her equally related to him with the others who seek a portion of his estate?

It might well happen that at the time the testator made his will he made provisions for his wife unsatisfactory to her and also provisions for his then living child or children. Such child or children may predecease him, thus lapsing the legacy and the widow would thereby be forbidden to take any more than one-half of his estate and the balance of it be distributed to remote heirs, simply because the widow may not have been satisfied with the provisions made for her in relation to her then living children. Such a situation would be intolerable.

We think the solution to this whole matter is that it relates entirely to testamentary disposition of estates, its purpose being to limit a widow who declines to take the provision made by her husband to not more than one-half of the estate in lieu of the provision made for her in the rejected will, as against the other devisees and the legatees named in the will who may be children of herself and her deceased husband or other designated beneficiaries.

If we hold that the provision of this statute relates to all intestate property and permits parties remotely related to the testator to come in and take a part of his estate to the exclusion of his wife, who has a special priority over such remote relatives by virtue of subdivision 4 of a statute which definitely provides for descent and distribution, we have applied the provisions of §10504-55 in a manner never intended by the Legislature, in that it provides a devolution of a decedent's property in a way never intended by him and not so disposed of by a will and never so disposed of by the statute until the intervention of the election of the widow. This would be quite out of harmony with the rules announced in Crane v Doty and in Bane v Wick, supra.

Judgment of the Court below affirmed. Cause remanded.

BARNES, J., concurs in judgment.
HORNBECK, PJ., dissents.

HORNBECK, PJ., Dissenting:
I am not insensible to the appeal which the cause of the widow makes in this case as against the distant relatives who claim against her. If her right could be determined purely upon equitable principles there is much to be said in favor of her taking the whole of her husband's estate. This equitable principle cannot control. The whole matter is one of statutory interpretation. Strong facts may make bad law and the danger is that a rule of interpretation which may be equitable

in this one case will prove to be unjust in the great mass of cases to which the controlling statutes apply.

No one has an inherent right to inherit property nor has the relict any such right to a share of the deceased spouse's intestate estate. They get only that which the law says they may receive. State ex Taylor v Guilbert, 70 Oh St 229. The widow's "right to elect is a creature of statutory law and we must look to the statutes creating it, alone, for the estoppel it is to work— Carder v Board of Commissioners, 16 Oh St 367. The Legislature had the full power to define the extent to which the widow in this case should share in any property of the deceased when she elected to take under §10504-55 GC.

We take no exceptions to the rule established before the effective date of the new probate code that an election by the widow to take under a will did not bar her rights in intestate property. Bane v Wick, 14 Oh St 505, Carder v Bd. of Commissioners, 16 Oh St 353, Doyle v Doyle, 50 Oh St 330, and we also recognize that the general rule is that where there is no residuary clause in the will, lapsed legacies or devises will go to those entitled to take under the laws of descent and distribution. Patton v Patton, 39 Oh St 590, Woolley v Paxson, 46 Oh St 307.

The Legislature by the enactment of §10504-55 GC, has limited the total estate to which the widow shall succeed, if she elects not to take under the will and this is defined as not to exceed one-half of the net estate. The statute formerly read, one-half of the estate and "net" was added in the last amendment to §10504-55. Under the present section, in Weller v Weller, 32 N. P. (NS) 329, it has been held that the net estate is that part of the estate which is left after the debts and costs of administration have been paid and includes intestate as well as testate property. This was the construction that was given the section even before amendment. The majority opinion, though not clear, seems to imply that the term "net estate" only has reference to that which is made the subject of disposition in the will.

The Legislature has heretofore definitely limited the extent to which a widow shall take who elects not to take under the will as being her dower and such share of the personal estate of the deceased consort as she or he respectively would be entitled to by law in case the deceased consort had died intestate, leaving children—former §10571 GC. It is now limited by §10504-55 GC, to the share of real estate and personal property which the widow would take if there was but one child.

Sec. 10504-61 GC, effective January 1, 1932, defining the rights of a widow when she elects to take under the will, expressly provides that she shall thereby be barred of all right to a share of the intestate estate unless she comes within the exception provided by the statute and makes Bane v Wick and Oglesbee v Miller, cited by the majority, of no effect now.

It is my judgment that the plaintiff cannot maintain the claim which she asserts in this case, either upon the letter of the controlling statute or upon the adjudications which are pertinent thereto. The express language of §10504-55 GC, measures the full extent to which the widow shall share as surviving spouse, subject only to such sections as may specifically give her preference as surviving widow. It would seem that the language, "in the event of the election to take under the statute of descent and distribution such spouse shall take not to exceed one-half of the estate" is definite and conclusive.

In the situation here presented the testator by will at his death, if the widow had accepted thereunder, had made but one effective provision, namely, the life income for his widow. Now, it is urged that the widow, electing to destroy this specific provision and to take under §10504-55 GC, may not only defeat the terms of the will but may also by law receive all of his estate. This to us seems untenable and contrary to the spirit of the present Probate Code under which the rights of a widow have been zealously guarded and materially increased.

It is urged by the plaintiff that the extent to which she takes by her election under §10504-55 GC, has no relation and is no bar to her participation as an heir under §10503-4 GC. That to permit the defendants to assert a right under the last named section would enable those who come under (8) of the §10503-4 GC, to take priority over the widow who comes under (4) of said section. The answer to this claim is that, although the widow does take by her election under §10504-55 GC, and not under the statute of descent and distribution, the extent to which she takes is defined in §10504-55, and she no longer is permitted to participate by virtue of §10503-4.

The construction which we adopt is in our judgment not only supported by Zizelman v Mayer, 27 Oh Ap 512, but also by Miller v Miller, 129 Oh St 230, and particularly the first and second syllabi.

Second Syl.—

"The phrase 'under the statute of descent and distribution, as used in. §10504-55 GC and §10504-60 GC, does not mean that the surviving spouse is actually placed within the operation of the statute of descent and distribution, (§10503-4 GC), but such phrase is used as merely definitive or descriptive of the share to be taken by the surviving spouse within a limitation of not to exceed one-half of the estate." (Emphasis ours).

Judge Zimmerman in this case in several places in the opinion indicates that the full extent to which the widow shall take upon election, to take under the statute of descent and distribution, not under the will, is fully measured by §10504-55 GC. He stresses at page 233 that the terms of §10503-4 GC have application only when a person dies intestate. It cannot be said that the decedent here died intestate though it may be said that some of his estate would pass as intestate property. · At page 235, the writer of the opinion quotes from §10504-55 GC, and emphasizes that portion which limits the extent to which the spouse shall take to not to exceed one-half of the estate and at the bottom of page 235—

"Sections 10504-55 and 10504-60 GC, are concerned with the property of an owner who dies testate. They give the relict of a testate property owner the right to reject his or her will and to take a share of his or her property which may often be less than if the owner had died intestate and the taking was clearly under the statute of descent and distribution. The argument (236) is therefore persuasive that the phrase 'under the statute of descent and distribution' appearing in the last mentioned sections is not there used in such sense as to place the relict directly under the operation of §10503-4, GC, but rather in the sense that such section shall be used as a measuring stick to determine the amount of the estate which shall be taken, within an absolute limitation of not more than one-half as prescribed by §10504-55 * * * The property which Clara J. Miller received from the estate of her husband did not come to her by reason of his intestacy, but because he left a will, the provisions of which she was conclusively presumed to have rejected. This conclusive presumption amounting to actual rejection, §10504-55 asserts itself, whereby one-half of the estate was all she could or did receive." (Emphasis ours).

In the Miller case it was conceded by the losing party that if the widow took by election it was to a restricted degree, under §10503-4, the statute of descent and distribution. Page 235 of the opinion. Miller v Miller could very easily have been decided to the effect that when the widow elected she took under the statute of descent and distribution. The section uses this language. namely, that she shall elect "whether to take under the will or under the statute of descent and distribution". Thus, that which the law says she shall elect to take. if not under the will, is under the statute of descent and distribution. But if she did take under the statute of descent and distribution the following part of the statute defines

what she shall so take, namely, "not to exceed one-half of the net estate".

Both parties cite and comment upon **Holt v Miller, 133 Oh St 418.** We are familiar with this case because it was reviewed by this court and our decision is reported in **26 Abs 395, 2 OO 357, 26 Abs 461.** The question in this case was whether or not under the terms of the will under consideration the widow of the testator could be considered an heir. We, of course, held that she could. After this case was decided and application for re-hearing was filed it was claimed that our holding was contrary to the judgment in Miller v Miller, supra. Upon the question we said that:

"The courts in the Miller case were not determining whether or not a widow may in Ohio at this time answer the general description of heir or heir-at-law, but determining the manner in which the widow took in the Miller case. The conclusion of the courts was that Clara J. Miller, widow of Harry B. Miller, had taken from him by reason of failing to make election under his will not under §10503-4 which is the general statute of descent and distribution, but by virtue of §10504-55 GC, which limited her to not more than one-half of her former husband's estate."

It will be noted that the opinion of the full court of the effect of §10504-55 as to the quantum of the estate which a widow would take thereunder, if electing to take under the statute of descent and distribution, was the same then as now expressed in this dissent.

## APPLICATION FOR REHEARING

No 414. Decided July 15, 1940.

BY THE COURT:

This cause is before this Court upon an application for re-hearing. The application is supported by brief of the defendants-appellants and, contrary to the usual custom, is opposed by brief in behalf of the appellee.

We have carefully noted the claims of the appellants and citation of authorities. We recognize the pertinency of the two decisions—**Jennings v Jennings, 21 Oh St 56,** and **Armstrong v Armstrong, 11 C. C. (NS) 474.** These cases were both considered by us at the time of the original hearing and we now see no reason to give them further consideration.

We also recognize the case of **Zeizelman, Executor v Maher, Administrator, 27 Oh Ap 512,** and have by entry found that the latter case is in conflict with the judgment rendered herein and have certified the record in this case to the Supreme Court for review and final determination.

See also **Davis v Warner, 47 Oh Ap 495, syl. 9; Shearn v Shearn, 60 Oh Ap 317.**

Both of these decisions give some support to appellants' position.

See also—the recently issued booklet by Kinney, entitled "Election in Ohio by an Ohio Spouse", published by Land Title & Trust Company, Cleveland, Ohio.

We also note the contention of counsel that the appellants are entitled to take one-half of the $50.00 weekly payments provided for the widow by Item II, but we fail to follow the argument of counsel in this contention.

The case has been so thoroughly briefed, argued and considered that we discover no good reason why the motion for re-hearing should be granted.

Motion denied.

Appropriate entries should be submitted to opposite counsel. We have from counsel for appellee a form of entry suggested by him. We think it best that the form he suggests be submitted to the examination of opposite counsel before it is submitted to the Court.

GEIGER & BARNES, JJ, concur.

HORNBECK, PJ. dissents from refusal to grant re-hearing.